[Civ. No. 23600.   First Dist., Div. Two.   July 24, 1967.]

JOHN KARPINSKI, Plaintiff and Respondent, v. GENE COLLINS et al., Defendants and Appellants.

Cominos, Shostak & Epstein and Lawrence Shostak for Defendants and Appellants.

Byers & Jacobs and Robert K. Byers for Plaintiff and Respondent.

SHOEMAKER, P. J.—Plaintiff John Karpinski brought this action against defendants Gene and Ruth Collins and the Santa Clara Creamery to recover secret rebates which plaintiff was allegedly compelled to pay defendants in order to secure and retain a Grade A contract for the sale of plaintiff's milk.

Plaintiff, the sole witness at the trial, was a dairyman. Prior to April 1962, he had sold his milk to a cheese factory under a contract entitling him to what in the business is called the Grade B price, which was established by the federal government and was approximately 60 percent of the Grade A price, which was established by the state. (The Grade A price was 44 cents per gallon and the Grade B price 27 cents per gallon.) Plaintiff testified that it was financially impossible for a dairyman in the Santa Clara Valley to remain in business without a Grade A contract.

Around April 1, 1962, defendant Gene Collins, the president of the Santa Clara Creamery, called on plaintiff and offered him a Grade A contract for the sale of his milk if plaintiff would pay him a rebate or "kickback" of four and one-half cents a gallon during the life of the contract. Plaintiff accepted the offer because no other Grade A contracts were available and he had no other choice.

On April 1, 1962, a formal contract was prepared whereby plaintiff agreed to sell the Santa Clara Creamery 51,600 pounds of Grade A milk per month, and the creamery agreed to purchase said milk at the Grade A price for the Santa Clara marketing area. The contract was terminable by either party upon 30 days' notice.

Thereafter, plaintiff furnished the milk and was paid the specified price. President Collins would then bill plaintiff for monthly "feeding charges" in an amount equal to the agreed rebate of four and one-half cents per gallon of milk delivered. No feeding services were ever performed by Collins or the Santa Clara Creamery.

Approximately one year after the contract had gone into effect, Collins informed plaintiff that he needed money to pay off a debt or he would lose the creamery; that if he did not loan him $6,500, Collins would terminate his contract and find

another dairyman who could raise the money. Collins promised to repay the loan by reducing the rebate one and one-half cents per gallon during the life of plaintiff's contract.

Plaintiff obtained the $6,500 and gave it to Collins in exchange for a promissory note dated April 16, 1963, signed by Collins and his wife. Plaintiff thereafter paid Collins a rebate of only three cents per gallon of milk delivered.

Plaintiff subsequently fell behind in the payment of his monthly rebates, making no payments after October 1963. By letter of May 22, 1964, Collins advised plaintiff that his contract had been terminated. Plaintiff was unable to obtain another Grade A milk contract and ultimately disposed of his dairy.

Plaintiff testified that during the life of his contract with the Santa Clara Creamery, his payments to Collins had totaled $10,677.72, which sum consisted of the $6,500 loan and $4,177.72 in secret rebates.

Upon the facts, the court concluded that plaintiff was entitled to judgment against defendants Gene and Ruth Collins in the amount of $6,500 and against defendant Gene Collins in the additional amount of $4,177.72.

Judgment was accordingly entered, and defendants Collins appeal therefrom.

Defendants contend that the judgment must be reversed because the trial court erred in its findings that plaintiff was not *in pari delicto* with defendants; that he was a member of the class protected by section 4280, subdivision (a), of the Agricultural Code; and that he was entitled to recover from defendants the sums illegally paid to secure and obtain the Grade A milk contract.

Defendants point out that section 4280, subdivision (a), is applicable to milk producers as well as to milk distributors and prohibits the acceptance as well as the payment of secret rebates, and assert that the evidence in the instant case establishes as a matter of law that the plaintiff violated the statute and was therefore *in pari delicto* with defendants. They rely upon *Owens* v. *Haslett* (1950) 98 Cal.App.2d 829, 833 [221 P.2d 252]; *Fong* v. *Miller* (1951) 105 Cal.App.2d 411, 413 [233 P.2d 606]; and *Hooper* v. *Barranti* (1947) 81 Cal.App. 2d 570, 574 [184 P.2d 688], as authority for the general rule that an illegal contract furnishes no basis for an action either in law or in equity. However, in our case, the situation is not one in which the two parties, who were equally at fault, made the joint decision to enter into a transaction violative of section

4280, subdivision (a), of the Agricultural Code. The trial court found that "because of his position," plaintiff was not *in pari delicto* with defendants. It is obvious that by plaintiff's "position," the court had reference to the fact that plaintiff was a small dairyman whose economic survival was dependent upon his ability to obtain a Grade A milk contract in a locality where such contracts were extremely scarce and that he was therefore peculiarly vulnerable to the exertion of economic coercion by a person such as defendant, who was apparently unwilling to do business with any dairyman who would not agree to pay him unlawful rebates. Under these circumstances, we are satisfied that the court correctly determined that the case came within a well-recognized exception to the rule of *in pari delicto* and that since plaintiff was only slightly at fault and defendants were grievously at fault, plaintiff was entitled to recover what he had rendered as performance of the executed illegal transaction. (*Severance* v. *Knight-Counihan Co.* (1947) 29 Cal.2d 561, 569 [177 P.2d 4, 172 A.L.R. 1107]; *McAllister* v. *Drapeau* (1939) 14 Cal.2d 102, 112 [92 P.2d 911, 125 A.L.R. 800].)

Defendants also point out that the purpose of the Milk Stabilization Act (Agr. Code, §§ 4200-4420) is to eliminate unfair, unjust, destructive and demoralizing trade practices in the producing, marketing, sale, processing or distribution of milk, which tend to undermine regulations and standards of the content and purity, and to insure a reasonable amount of stability and prosperity in the marketing of milk. (Agr. Code, §§ 4200-4201; *Paul* v. *Wadler* (1962) 209 Cal.App.2d 615, 619 [26 Cal.Rptr. 341].) Defendants assert that section 4280, subdivision (a), and certain other provisions of the Milk Stabilization Act which prohibit unfair trade practices, are very similar to the Unfair Practices Act (Bus. & Prof. Code, §§ 17000-17101) and that both acts should be applied in the same manner. Since section 17051 of the Business and Professions Code provides that any contract made in violation of the Unfair Practices Act is illegal and affords no basis for recovery, defendants reason that the same rule should apply to contracts made in violation of section 4280, subdivision (a) of the Agricultural Code.

No provision similar to section 17051 of the Business and Professions Code is contained in the Milk Stabilization Act. Undoubtedly the Legislature in enacting the Milk Stabilization Act saw no necessity for including such a directive and being familiar with the doctrine of *in pari delicto* and the

courts' application thereof, left the matters arising under the act to be dealt with by the courts as the facts of each case might warrant.

Judgment affirmed.

Agee, J., and Taylor, J., concurred.