[No. C004782. Third Dist. Aug. 10, 1990.]

RAYMOND L. BLAIN et al., Plaintiffs and Appellants, v.
DOCTOR'S COMPANY et al., Defendants and Respondents.

## COUNSEL

Wilcoxen, Callahan, Montgomery & Harbison, Daniel E. Wilcoxen and Roger V. Jaffe, for Plaintiffs and Appellants.

Donahue & Callaham, Stephen J. Mackey, Greines, Martin, Stein & Richland, Alan G. Martin, Bonne, Jones, Bridges, Mueller, O'Keefe & Hunt, H. Gilbert Jones, Crosby, Heafey, Roach & May, Chris G. Gasparich, James C. Martin and Joseph P. Mascovich, for Defendants and Respondents.

## OPINION

**BLEASE, Acting P. J.**—This appeal tenders the question whether the doctrine of unclean hands precludes an action for legal malpractice predicated upon injuries caused when Raymond L. Blain, a physician-defendant in a medical malpractice action, followed the advice of his lawyer to lie at a deposition. We shall conclude that it does.

The appeal arises from a judgment of dismissal following the sustaining of general demurrers to Blain's complaint. The complaint is founded upon the claim that insurance defense counsel advised Blain, the insured, to lie at his deposition in the medical malpractice action, which advice Blain followed. This resulted in the filing of an amended complaint against Blain seeking punitive damages. That action was later settled. The insurance company, the Doctor's Company (Doctor's), paid the policy limits and Blain paid nothing. Blain contends that in these circumstances he has stated a cause of action on the theory that defense counsel's improper strategy exposed him to greater liability, caused him emotional distress, and precluded his further work as a physician.

We will affirm the judgment.

## FACTS AND PROCEDURAL BACKGROUND

### A.

### The First Amended Complaint

■ This case arises upon an order granting a demurrer to Blain's first amended complaint. For that reason the facts under review are those alleged in the plaintiff's pleadings, viewed favorably to him, and facts judicially noticed. (See *Blank* v. *Kirwan* (1985) 39 Cal.3d 311 [216 Cal.Rptr. 718, 703 P.2d 58].)[1]

The first amended complaint is organized into five counts styled as causes of action. We set forth the essential allegations by reference to count.

### 1. First Count

Blain was an insured under a policy of insurance obliging Doctor's to defend him and to indemnify him for damages (to $1 million) recovered in any medical malpractice action brought against him. In April 1983 a medical malpractice action was filed on behalf of Stacy Marchand against Blain, Robert Achtel (another physician), and others. Doctor's retained a law firm for Blain's defense. In that role defense counsel "fail[ed] to exercise reasonable care and skill and/or negligently advis[ed] plaintiff . . . ."

The core allegations concerning this malpractice are contained in paragraph 14, which alleges that counsel erred in the following respects. "1. failing to advise [Blain] that [defense counsel] had a dual responsibility to [Doctor's] and to [Blain] so that [Blain] could understand the relationship of the parties and employ personal counsel if necessary, 2. failing to represent the interests of [Blain] in deference to the interests of [Doctor's], 3. giving improper legal advise [*sic*] to [Blain] regarding [his] testimony and conduct at [his] deposition in the [Marchand] action, with the intent of benefiting the insurer and/or other defendants, as opposed to the insured, 4. giving improper advise [*sic*] regarding the defenseability [*sic*] of [Blain's]

---

[1] " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law. We also consider matters which may be judicially noticed.' Further we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank* v. *Kirwan, supra*, 39 Cal.3d at p. 318; citations omitted.)

position in the [Marchand] action subsequent to [his] deposition in said action, 5. improperly advising [Blain] to sue attorneys for plaintiffs MARCHAND in the [Marchand] action for abuse of process and/or malicious prosecution for suing BLAIN for punitive damages, 6. failing to advise [Blain] as to his rights to demand settlement of the underlying action, 7. failure to advise [Blain] of his rights to independent and/or Cumis counsel in the [Marchand] action subsequent to, [Blain] being sued for punitive damages in the [Marchand] action, and/or demands for settlement within policy limits, 8. failing to cross-complain against co-defendant ACHTEL in the [Marchand] action, 9. failing to advise [*Blain*] that a failure to disclose, in his deposition in the [Marchand] action, all facts known to him concerning the conduct of DR. ACHTEL would increase the liability as against [Blain] *in the [Marchand] action and other actions, unknown representations and conduct not set forth herein consistent with the allegations hereinabove set forth and in addition thereto, unknown conduct of [defense counsel].*"

It is further alleged that Blain relied on or followed this advice or acted in the absence of advice and consequently suffered injuries of the following kind. He was exposed to greater liability in the Marchand action. He suffered severe emotional distress requiring medical treatment. "[He] will be prevented from attending to his usual occupation, indefin[i]tely into the future . . . ."

Doctor's, defense counsel, and the other defendants "acted in concert and/or civilly conspired for profit motive to engage in the conduct hereinabove set forth. Said conduct was engaged in with the intent to reduce the likelihood of success of plaintiffs MARCHAND recovering in the [Marchand] action."

### 2. Second Through Fifth Counts

The plaintiff follows a reiterative style of pleading. The allegations of the first count are incorporated by reference into the succeeding count. The allegations of the second count including the incorporated allegations of the first count are incorporated into the subsequent counts, and so on for each succeeding count. The additional allegations are as follows.

In the second count it is alleged that the conduct alleged in the first count was "intentional, outrageous, reckless, oppressive, malicious, [and] despicable" and Blain is entitled to punitive damages.

In the third count it is alleged that such conduct breached the duties of good faith and fair dealing owed by all defendants to Blain and was a breach

of fiduciary duties owed by all defendants to Blain. On this ground Blain is entitled to punitive damages.

In the fourth count the defendants, in violation of contractual and fiduciary duty to Blain, are alleged to have engaged in the following course of conduct: "(1) failure to pay, in a timely manner, insurance benefits to a third party, when the third party was entitled to said benefits under the terms and conditions of said insurance policy; (2) unreasonably delaying payment to a third party knowing that said delay would cause [Blain] to incur personal damage and/or greater liability; (3) unreasonably withholding [sic] payments from third party knowing requests for payments and settlement under [Blain's] policy were reasonable and valid; (4) providing legal counsel for [Blain] who did negligently represent [him] and cause him to incur greater liability and refusing to provide independent counsel or pay independent counsel for [Blain]; and continuing to date; to refuse to provide independent counsel and/or pay independent counsel for [Blain]; (5) not attempting in good faith to effectuate a prompt, fair and equitable settlement of third party claims against [Blain]; (6) failure to provide a reasonable explanation of [the] basis relied on the insurance policy, in relation to applicable facts, for the denial of third party claims against [Blain]." By engaging in these acts the defendants "have violated their statutory duties contained within California Insurance Code section 790.03."

The fifth count alleges that the wrongful conduct of defendants caused Blain's wife to suffer loss of consortium.

## B.

### Facts Judicially Noticed

The trial court also had before it certain facts by way of judicial notice.

On July 25, 1985, the plaintiffs in the Marchand action filed an amended complaint containing two counts under which punitive damages of $15 million were sought against Blain. The first of these counts alleges that Blain misrepresented the medical condition of Stacy Marchand to her parents in order to induce them to consent to her transfer to a different hospital and that her injuries were attributable to the ill-advised transfer. The second count alleges that Blain made a similar misrepresentation to Achtel to obtain his consent to transportation and to assume responsibility for Stacy's care, causing similar deleterious consequences.

On December 1, 1986, the Marchand action as to Blain was settled by agreement. The agreement provides for immediate payments totaling

$450,000, future lump sum payments totaling $300,000, and ongoing monthly payments beginning at $2,500 and increasing in stages to $4,500 for the shorter of 10 years or the life of Stacy Marchand. At the time of the settlement agreement Blain was represented in the Marchand action by (personally) retained counsel who filed this malpractice action for Blain.

Blain's original complaint in this action contained the following allegation.

"Defendants, and each of them, did negligently and carelessly perform their duties and responsibilities as [Blain's] insurers, insurers agents and attorneys, including but not limited to the following acts and/or omissions: (1) said defendants instructed [Blain], in his deposition, to *not* tell the truth regarding certain matters; (2) said defendants instructed [Blain] to withhold certain information which was asked of [him] in his deposition; (3) that [Blain] informed said defendants that he had recollection of specific conversations with [Achtel], and was instructed by said defendants to deny having specific knowledge of said conversations, and to limit his knowledge to general recollections; (4) that on several occasions during [Blain's] deposition, the deposition was halted by said defendants, at which time said defendants instructed [Blain] to answer a question in a specific manner as instructed by him; (5) that said defendants instructed [Blain] not to remember specific conversations with [Achtel] to lessen the liability of all defendants in said action; (6) that resulting from the above instructions to [Blain], said defendants caused [Blain] to expose himself to liability and/or greater liability, including punitive damages of $47,000,000; (7) that said defendants civilly conspired with other defendants, in [the Marchand action], in an attempt to limit all defendants liability, by engaging in the conduct set forth above; (8) that said defendants negligently retained legal counsel for [Blain], which counsel acted as stated herein; and (a) said defendants failed and refused to provide [Blain] with private, independent counsel, in spite of defendants knowledge of a conflict of interest with [Blain]."

Blain's original complaint also contained the following allegations. "[Blain] relied on said defendants' representations, advice, and counseling, and being ignorant of insurance and legal matters, agreed to conduct himself as advised by said defendants, and continued to be represented by defendants and each of them." "As a [result of the defendants' alleged wrongdoing, Blain] will be prevented from attending to his usual occupation indefinitely into the future. Because of aforementioned and emotional injury plaintiff is unable to continue his usual occupation and is presently attending school in anticipation of a change of vocation."

## C.

### Trial Court Ruling

The defendants successfully demurred to Blain's original complaint. They subsequently demurred to the first amended complaint for failure to state a cause of action. Defendants challenged all of the claims on two theories: that communications between defense counsel and Blain were privileged under Civil Code section 47 and that the claims are barred by the doctrine known as unclean hands or in pari delicto.[2] The trial court sustained the demurrers without leave to amend and subsequently rendered a judgment of dismissal.

### DISCUSSION

### I

### Introduction

Blain argues that neither the defense of privilege nor the defense of unclean hands has merit. We need not resolve the first of these issues. We shall assume therefore that Blain is correct in asserting that the privilege derived by case law from Civil Code section 47, subdivision 2, is not a bar to his action. That leaves the defense of unclean hands.

Blain contends that the law of unclean hands does not bar his cause of action for attorney malpractice.[3] He argues that the doctrine is inapplicable for the reason that an attorney's culpability is far greater than that of his client when the attorney advises his client to commit misconduct and the client follows the advice. We will conclude that the doctrine applies and that none of Blain's claims of injury causally linked to his misconduct is maintainable.

Blain's remaining claim is that he has stated some cause of action independent of his own misconduct. We reject the claim for the reason that the

---

[2] In addition, with respect to the claim that Blain had not been reimbursed for the expense of independent counsel, defendants contended that the pleading failed to allege facts showing a conflict of interest between the insurer and insured that would warrant independent counsel.

[3] Blain asserts that he has stated causes of action for attorney malpractice and insurance company bad faith. Blain gives us no reason to suppose that in these circumstances liability, unlike water, may rise higher than its source. Since both claims are founded upon the alleged active misconduct of his insurance defense counsel, we examine the claims for statement of a cause of action for attorney malpractice.

allegations point to no intelligible claims that are not causal derivatives of that misconduct. We will uphold the dismissal following the sustained general demurrers.

■ Preliminarily we reject Blain's argument that we should not reach this defense by way of demurrer because the misconduct is not alleged in the (first amended) complaint to which the demurrers were sustained. He reasons: "The complaints do *not allege* that Dr. Blain acted wrongfully, but rather, that Respondents gave him bad advice and that he relied on that bad advice to his detriment and damage." (Italics in original.)

As best we can make out, this argument is premised upon the idea that an allegation of wrongful conduct requires that the pleader state the legal conclusion that the conduct is wrongful. Our theory of ultimate fact pleading is precisely the opposite. (See 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 338.) The bad advice which Blain alleged he was given was advice to lie at his deposition. That is what he candidly alleged in his original complaint. That is what his counsel said in opposing the demurrers to the original complaint. "We are talking about legal malpractice based on advice that an attorney told his client that he should lie, and not tell the truth." The coyness of the first amended complaint in retreating to the vacuous generality "improper legal advise [*sic*] to [Blain] regarding [his] testimony and conduct at [his] deposition" is unavailing. Where a complaint contains allegations destructive of a cause of action the defect cannot be cured by their omission without explanation in a subsequent pleading. (*Reichert* v. *General Ins. Co.* (1968) 68 Cal.2d 822, 836 [69 Cal.Rptr. 321, 442 P.2d 377].) For purposes of a demurrer to an amended pleading an unexplained suppression of the original destructive allegation will not, in the words of Lady MacBeth, wash out the "damned spot." (*Ibid.*; also see, e.g., 4 Witkin, Cal. Procedure, *supra*, Pleading, § 412.)

Reading the complaints together, Blain has pled that he was advised to lie at his deposition and that he followed that advice resulting in harm to his interests. On this reading Blain alleges that *he* committed serious misconduct which was the cause of his injuries. This leads to consideration of the law of unclean hands.

## II

### The Disparate Law of Unclean Hands

Whether the facts pleaded state a cause of action turns on the law of unclean hands. We take our initial bearings from a general overview of the law. Professor Chafee commences his insightful discussion of the law with

the following caveat. "The most amusing maxim of equity is 'He who comes into Equity must come with clean hands.' It has given rise to many interesting cases and poor jokes." (Chafee, *Coming Into Equity With Clean Hands* (1949) 47 Mich. L.Rev. 877, hereafter *Chafee, Clean Hands I*.) As Chafee explains, the doctrine of clean hands is not one but a number of disparate doctrines, dependent for their substance upon the context of application. "*First*, the clean hands maxim is not peculiar to equity, but is simply a picturesque phrase applied by equity judges to a general principle running through damage actions as well as suits for specific relief. This principle is that the plaintiff's fault is often an important element in the judicial settlement of disputes, as well as the defendant's fault. [¶] *Second*, this principle of plaintiff's fault has rather weak unifying qualities. It can better be described as a string around a loose bundle of separate defenses which somewhat resemble each other. This resemblance may occasionally render analogies helpful, but more significant is the way the effect given to the plaintiff's misconduct depends on the nature of his wrong and on the nature of the defendant's wrong. In other words, this vague single principle gets most of its qualities in a given group of cases from the substantive law of the particular subject. It is largely shaped by the human practices and public policies involved in the situation." (Chafee, *Coming Into Equity With Clean Hands: II* (1949) 47 Mich. L.Rev. 1065, 1091-1092, hereafter *Chafee, Clean Hands II.*)

Following this analysis we must identify the category within the aggregate of "clean hands" cases to which this case belongs. Chafee calls that category "Miscellaneous tort suits by a person charged with crime." (*Chafee, Clean Hands I, supra*, 47 Mich. L.Rev. at p. 903.) He further refines the category by reference to cases in which the victim of the tort was a transgressor. (*Id.* at pp. 904-905.) Unfortunately, he offers no detailed exposition of the case law. Rather, he suggests that "the principle is considerably shaped by the special nature of each kind of tort . . . ." (*Id.* at p. 905.)

Chafee does give qualified endorsement of a synopsis of the rule in such cases formulated by Dean Wigmore. " 'The fact that a plaintiff at the time of receiving an injury is doing an act in violation of the law is not an excuse for the defendant who has negligently caused the harm[] unless . . . the law violated had for a main purpose, *(a)* if a criminal law, to prevent by penalty the entire transaction in which plaintiff was engaged, or *(b)* if a civil or a criminal law, to protect an interest of the defendant which the plaintiff was attempting to injure.' " (*Chafee, Clean Hands I, supra*, 47 Mich. L.Rev. at p. 905, fn. omitted.) Chafee's qualification lies in the observation that while enlightening, this synopsis "gives the impression of a greater unity than really exists." (*Ibid.*) What cases would lie in the first of Wigmore's categories is not self-explanatory.

This subject is also generally addressed in the Restatement Second of Torts. Section 889 expresses the doctrine of unclean hands as a bar to recovery in tort as follows. "One is not barred from recovery for an interference with his legally protected interests *merely* because at the time of the interference he was committing a tort or a crime . . . ." (Italics added.) The question of course is what counts as "merely?" The comments to the section are unilluminating. The topic of clean hands is also addressed in section 940, which pertains to the denial of injunctive relief against tortious conduct on the ground of plaintiff's related misconduct. The section identifies the matters to be considered as the connection of the misconduct to the controversy and the nature of plaintiff's interests. It suggests that the defense may be inappropriate, "if the misconduct relates directly to the controversy immediately involved in the injunction suit and is of a character that renders the plaintiff's interests undeserving of injunctive protection." (*Id.*, com. b, p. 579.)

We glean from this sparse product that whether there is a bar depends upon the analogous case law, the nature of the misconduct, and the relationship of the misconduct to the claimed injuries.

### III

### The Defense of Unclean Hands Bars Some Claims Based on Perjury in the Course of Litigation

The most analogous cases are those proffered by Doctor's, two recent out-of-state legal malpractice cases involving injuries resulting from client perjury engaged in at the behest of counsel.

In the first case, *Kirkland* v. *Mannis* (1982) 55 Ore.App. 613 [639 P.2d 671], a convict sought damages claiming that his criminal defense counsel had led him to testify falsely causing him to be convicted. The Oregon court of appeal gave this claim short shrift, upholding a judgment on the pleadings. "The essence of [the pertinent allegations] is that plaintiff and defendant cooperatively presented a perjurious tale at plaintiff's criminal trial, and the tale did not sell. Because of his acknowledged perjury, plaintiff brings his complaint with unclean hands and may not recover." (639 P.2d at p. 673.)

The other case is *Feld & Sons* v. *Pechner, Dorfman, Wolfee, etc.* (1983) 312 Pa.Super. 125 [458 A.2d 545]. The plaintiffs were clothiers convicted of federal offenses of perjury and related acts in proceedings before the National Labor Relations Board. They sought damages from their counsel on the claim they were advised to commit the offenses. Under the rubric " 'no

court will lend its aid to a man who grounds his action upon an immoral or illegal act' " the court upheld demurrers to the bulk of plaintiffs' claims for compensatory and punitive damages for malpractice and infliction of emotional distress. (458 A.2d at pp. 552, 554-555.) The court reasoned that to allow recovery would "reward appellants, with a great deal of money, for their criminal conduct; we should soften the blow of the fines and sentences imposed upon them; and we should encourage others to believe that if they committed crimes on their lawyers' advice, and were caught, they too might sue their lawyers and be similarly rewarded." (*Id.* at p. 552.)

Nonetheless, the *Feld & Sons* opinion permitted the action to go forward insofar as the cause sought recovery of the fees paid to counsel. (458 A.2d at p. 554.) The opinion reasons that refusing to aid the client in this respect would aid the wrongdoing lawyer in allowing him to retain ill-gotten goods. In such circumstances permitting the client to go forward is the lesser of two evils. (*Id.* at pp. 552-554.)

Blain responds that these cases are contradicted by California authority, namely, *Sontag* v. *Denio* (1937) 23 Cal.App.2d 319 [73 P.2d 248].[4] In *Sontag* this court concluded that the doctrine of unclean hands did not bar a complaint for the recovery of property conveyed to an attorney by a client. The complaint alleged that the attorney advised the client to convey the property to him to defraud a judgment creditor on the representation that the attorney would reconvey the property to the client when the danger was past.

The opinion relies upon the following passage from the similar case of *Clark* v. *Millsap* (1926) 197 Cal. 765 [242 P. 918]. "The commonplace maxims of equity, 'he who seeks equity must do equity' and 'he who comes into a court of equity must come with clean hands' have no application to the facts adduced in the instant case. Certainly the law will not hold a client *in pari delicto* with her attorney who, acting under his nfluence and advice, places her property in his name and possession for purposes of concealment. As between the two the client is not, in the eyes of the law, as culpable as the legal adviser." (*Id.* at p. 783.)

From these cases Blain derives the rule that when a client engages in misconduct at the behest of an attorney the doctrine of unclean hands is inapplicable because they are not equally culpable. The claim rests on boilerplate generalities. This is precisely the sort of overgeneralization that Chafee cautions against. The subtle yet elementary precept of the common

---

[4] Presumably Blain would make the same response to other out-of-state cases denying relief in malpractice cases to clients who engaged in misconduct other than perjury. (See 2 Mallen & Smith, Legal Malpractice (3d ed. 1989) § 17.4 and cases collected therein.)

law is that the law is in the holding, i.e., in the application of doctrine and precedent on the facts of the case. Attention to this precept is all the more important where, as in the law of unclean hands, disparate fact patterns are grouped under a doctrinal label by reason of their general resemblance.

The crux of *Sontag* and *Clark* is not the use of the maxim in pari delicto as a litmus test. Rather, as both note, the "true rule in such cases" is " 'that *under the circumstances* there should be an application of that rule of equity which denies relief to one party against another when both have been engaged in a fraudulent transaction . . . . One was legal adviser, the other client. The advice of the former being adopted, he procured title to the latter's interest in valuable real estate. Equity will not tolerate the idea that an attorney may make use of his peculiar power over his client to procure a contract which is illegal and contrary to public policy, and then invoke the aid of the law to enable him to retain that which he has obtained through his fraudulent artifices.' " (*Clark, supra,* 197 Cal. at pp. 783-784; italics added.)

Blain's reading of *Sontag* is far too broad. Laypersons may be confused about the legality of sham transactions employed to frustrate creditors. But there is little plausibility in the claim that one was confused about the legality of lying in the teeth of the oath just sworn. The key consideration in *Sontag* was that the lawyer would personally profit from his wrongdoing at the expense of the client if the client were left without a remedy. We see no contradiction between the holdings in *Sontag* and *Clark* on the one hand and *Kirkland* and *Feld & Sons* on the other. Indeed, the portion of the holding in *Feld & Sons,* recognizing a cause of action to recover fees paid to the allegedly iniquitous attorney, echoes the rule of the *Sontag* and *Clark.*

We find *Kirkland* and *Feld & Sons, supra,* persuasive and would adopt them if squarely on point. They are not. In both cases the injury stemmed from a criminal conviction, attributable to the ill-advised perjury, and recovery might have softened the effect of the penal sanction. In this case the claims of injury are not so premised. While guided by these precedents, we fashion the rule here on the facts at hand.

## IV

### Blain Has No Cause of Action for Injury Caused by His Own Misconduct

"The elements of a cause of action in tort for [legal malpractice] are: (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a

breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." (*Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433].)

Blain's cause of action, if any, is dependent upon the injury suffered. (See 4 Witkin, Cal. Procedure, *supra*, § 25.) Whether an injury is compensable in the law of tort is dependent upon an invasion of a legally protected interest. (See Rest.2d Torts, § 7.) Blain proffers three discernible kinds of injury stemming from counsel's advice: (A) he was "exposed . . . to greater liability"; (B) he suffered emotional distress because of that exposure and the delay of resolution of the Marchand litigation; and (C) he will be prevented from working as a physician.

### A.

The first of these claims is untenable regardless of unclean hands. There is no cognizable harm attributable to the mere exposure to liability. The exposure must result in compensable detriment. (Cf., e.g., *Stevens* v. *Geduldig* (1986) 42 Cal.3d 24, 35 [227 Cal.Rptr. 405, 719 P.2d 1001].) That test cannot be met. The Marchand action was settled without monetary cost to Blain.

### B.

Blain's second claim is that he suffered emotional distress resulting from exposure either to greater liability or to a delay in settling the Marchand litigation. A cause of action founded on this injury is barred by the defense of unclean hands.

Blain's emotional distress, if any, is attributable to his own knowing misbehavior. Even the most naive must know that lying under oath is illegal. A doctor who lies under oath about the incident for which he is being sued must know that if the lie is discovered it will adversely affect his defense. Finally, the relationship of misconduct to harm in this case is direct and not incidental. The misconduct was, so it is alleged, the instrumentality of harm.

Although recognition of a cause of action would tend to deter attorneys from advising their clients to lie under oath, the societal interest in deterring such behavior is already subject to vindication through criminal sanctions or professional disciplinary proceedings. We assume that a bona fide claim of attorney misconduct as egregious as that alleged in the complaint will be

reported to the appropriate authorities and that they will respond appropriately.

Moreover, there is no suggestion in the allegations that the defendant attorney gained any personal benefit in bringing about the alleged injury. Indeed, on the facts pled the attorney cost the other defendant, Doctor's, a great deal.

For these reasons and in light of the precedents discussed we conclude that the doctrine of unclean hands bars a cause of action premised on the alleged injury of emotional distress.

### C.

██ The remaining claim of injury is the loss of the ability to practice medicine. The pleadings suggest that this loss was occasioned by the emotional distress considered above and on this reading the claim is untenable for the reasons already discussed. However, Blain also suggested in the trial court that the loss was caused by an unnecessarily large recovery against Doctor's attributable to his misconduct rather than medical misconduct in the underlying transaction. He asserts that the recovery will lead to denial of medical malpractice insurance; that without such insurance he cannot work as a physician, and that if he had not been advised to lie that would not have occurred. Since the demurrers were sustained without leave to amend, we treat these assertions as if alleged.

We assume for the sake of argument that Blain could prove that his perjury caused him to be uninsurable and that the optimal alternative vocation that he will likely obtain would not be as remunerative. Nonetheless, we conclude that the claim is barred under the pertinent branch of the clean hands doctrine.

The primary considerations which weigh against Blain parallel those concerning the claim of emotional distress. They are joined by another. The alleged perjury concerned the malpractice of another physician observed by Blain in the course of his duties as a physician. The misconduct was designed to disadvantage an injured patient in pursuing a claim for medical malpractice, resulting in severe and permanent injuries. This is an "act involving dishonesty or corruption which is substantially related to the qualifications, functions, or duties of a physician and surgeon" within the meaning of Business and Professions Code section 2234, subdivision (e). Such an act is grounds for the professional discipline of a physician. For these reasons Blain's misconduct inherently involved a risk of impairment of his ability to practice medicine.

## V

### Blain Has Not Stated A Cause of Action Independent of His Misconduct

This reduces Blain's position to the argument that he has alleged a cause of action independent of lying. There is no development of this argument in the briefs. The thrust of Blain's argument in the trial court was that his claim rested on unethical and illegal advice to lie. However, at oral argument in this court the additional contention was advanced that the allegations of paragraph 14 of the amended complaint support independent causes of action.

We have examined these allegations to see if some nascent tort can be premised upon them. Giving Blain's pleading the benefit of every reasonable intendment, we conclude that his wrongful conduct in lying either is inextricably intertwined with the allegations of paragraph 14 or that no other plausible causal connection can be drawn between the defendants' conduct and the harms alleged.[5]

The first group of allegations are those necessarily connected with the misconduct. We have already discussed the central allegation, that Blain was given improper advice to lie resulting in the injuries alleged. The following allegations of paragraph 14 are swept into this causal vortex: failure to advise that counsel had a dual responsibility, representing the interests of the insurance company rather than Blain, giving improper advice about the post-deposition defensibility of the action, failing to advise as to Blain's rights to demand settlement, failing to cross-complain against codefendant Achtel, and failing to advise that following counsel's advice about the deposition testimony would increase liability exposure. Each of these allegations is a shadow allegation of the allegation of professional negligence in advising Blain to lie. The reciprocal of bad advice is the failure to give the good advice that should have been given. Such a reciprocal omission cannot be viewed as causally independent of the injuries resulting from the advice to lie.

This leaves two allegations. The first is that counsel erred in giving improper advice to sue the Marchand's attorneys for abuse of process and

---

[5] As is so often the case with the pleadings we are called upon to review, Blain's first amended complaint honors the requirement of ultimate fact pleading more in the breach than in the observance. (See 4 Witkin, Cal. Procedure, *supra*, Pleading, § 332.) It is replete with legal conclusions and elliptical and redundant assertions. It is also illogically organized in the form of disconnected snippets leading nowhere like stairways in the Winchester house. Blain has made no particularized argument for a cause of action independent of his own misconduct. We therefore discount as unintelligible any claims located in this morass except those discussed in the text.

malicious prosecution because of their amendment of the Marchand's complaint to seek punitive damages from Blain. This asserts that bad advice was given *after* Blain's misconduct and could in theory qualify as causally independent of the misconduct. However, the allegation is disembodied; it is not connected with other allegations sufficient to state a cause of action. Nor do we perceive any reasonable prospect that it might be.

Blain must allege a causal connection between the negligence of counsel and the injury he suffered. Ordinarily that is accomplished by implication from the juxtaposition of the allegations of wrongful conduct and harm. (See 4 Witkin, Cal. Procedure, *supra*, Pleading, §§ 561-566, pp. 600-606.) However, where the pleaded facts of negligence and injury do not naturally give rise to an inference of causation the plaintiff must plead specific facts affording an inference the one caused the other. (See *id.*, § 562.)

Here, assuming its truth, the allegation of bad advice to sue the opposing counsel does not afford an inference that such advice caused the injuries pled. In the malpractice action against Blain, the complaint had already been amended to seek punitive damages as a result of the prior alleged blunder and the causal chain to the ensuing injuries is direct and complete. There is no allegation of harm reasonably attributable to the subsequent bad advice, e.g., harm in the nature of litigation costs of the suit against opposing counsel or damages in a counter suit for malicious prosecution. It was incumbent upon Blain to plead facts showing some role of the alleged secondary negligence in bringing about or enhancing the injuries pled. Hence, the allegation of secondary negligence is inadequate to state a cause of action.

■■■■ That leaves the allegation that counsel erred in failing to advise Blain of his right to independent counsel subsequent to the initial advice to lie at his deposition.[6] This allegation also goes nowhere without some other allegation showing its causal connection to the injuries alleged, all the more so since Blain, despite the lack of such advice, did acquire independent counsel.

---

[6] We note there can be a cause of action for failure to compensate independent counsel retained by an insured. (See *Purdy* v. *Pacific Automobile Ins. Co.* (1984) 157 Cal.App.3d 59, 76-77 [203 Cal.Rptr. 524]; *San Diego Navy Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358, 375 [208 Cal.Rptr. 494, 50 A.L.R.4th 913]; Civ. Code, § 2860.) The cause of action lies where there is a conflict of interest of such magnitude that the courts impose a duty on the insurer to provide independent counsel to the insured. (*Ibid.*) As related, defendants' demurrers were premised in part on the claim that Blain's pleading fails to allege the facts constituting a conflict. Blain's briefs on appeal do not discuss this point. We therefore deem any such claim waived. (See 9 Witkin, Cal. Procedure, *supra*, § 479.) Moreover, there is no indication in the complaint that the expense of independent counsel is an injury for which Blain is seeking compensation.

## DISPOSITION

None of the intelligible claims of the first amended complaint state a cause of action. Blain did not give the trial court reason to suppose that, by further amendment of his pleading, he could state a cause of action. Since he has no cause of action in tort his spouse has no cause of action for loss of consortium. (See Rest.2d Torts, § 693, com. (e); cf. *Brittell* v. *Young* (1979) 90 Cal.App.3d 400 [153 Cal.Rptr. 387].) The trial court did not err in sustaining the demurrers to the complaint without leave to amend.

The judgment is affirmed.

Sparks, J., and Scotland, J., concurred.