**His Excellency Sheikh Abdulaziz Bin Ibrahim AL–IBRAHIM, Plaintiff,**

v.

**George EDDE, Defendant.**

**Civ. A. No. 95–1145 PLF.**

United States District Court, District of Columbia.

Sept. 8, 1995.

Elroy H. Wolff, Sidley & Austin, Washington, DC, for plaintiff.

Mark London, London & Mead, Washington, DC, for defendant.

## OPINION

PAUL L. FRIEDMAN, District Judge.

George Edde has filed a counterclaim alleging that his former employer, Sheikh Abdulaziz Bin Ibrahim Al–Ibrahim, breached an oral contract to reimburse Mr. Edde for tax liability Edde incurred when he fraudulently claimed some of the Sheikh's gambling winnings as his own and paid federal income taxes on those winnings. In addition to this breach of contract claim, Mr. Edde seeks restitution of the amount of money he paid to

the IRS, $400,000, plus interest. He also seeks compensatory and punitive damages for fraud, alleging that the Sheikh defrauded him by falsely promising to reimburse him for those tax payments, and for the intentional infliction of emotional distress.

## DISCUSSION

■ On a motion to dismiss, the Court operates within the factual universe described by the complaining party. This requires that the pleader's factual allegations be taken as true and that any ambiguities be resolved in his favor. *Summit Health, Ltd. v. Pinhas,* 500 U.S. 322, 325, 111 S.Ct. 1842, 1844, 114 L.Ed.2d 366 (1991); *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994); *Tele–Communications of Key West, Inc. v. United States,* 757 F.2d 1330, 1334–35 (D.C.Cir.1985).

According to Mr. Edde's description of the events leading up to this contentious dispute, a promise of employment by Sheikh Al–Ibrahim lured him away from his home in California during the mid 1980's. Mr. Edde found himself occupied as the Sheikh's constant companion. He alleges that the Sheikh, a frequent high stakes gambler, required Mr. Edde to accompany him on numerous visits to casinos in the United States and "insisted that Mr. Edde … claim credit for [Sheikh Al–Ibrahim's gambling] winnings." Counterclaim ¶ 7. Mr. Edde admits that he signed for the Sheikh's winnings on documents that were submitted to the Internal Revenue Service. Countercl. ¶ 7. Mr. Edde asserts that he "clearly understood that his signing for the Sheikh's gambling winnings was a condition of his employment and that if he refused to do so, he would be discharged." Countercl. ¶ 9.

In 1991 Mr. Edde's circumstances deteriorated. Sheikh Al–Ibrahim's demands left Mr. Edde at the point of exhaustion, he began to have marital difficulties, and the IRS began to contact him about taxes due on the gambling winnings he had signed for. Countercl. ¶¶ 10–11. Mr. Edde gave notice

of his resignation to Sheikh Al–Ibrahim because "he could no longer continue to work for him at such a pace," and left the Sheikh's employ in late 1991. Countercl. ¶ 13. After leaving the Sheikh, Mr. Edde began negotiations with the IRS regarding the unpaid taxes on the gambling winnings. In August 1992, Mr. Edde reached an agreement with the IRS by which he would pay past obligations, interest and penalties on the gambling winnings he had claimed as his own. Countercl. ¶ 14. Mr. Edde asserts that as a result of representations made by the Sheikh both during and after his employment, he understood that the Sheikh would reimburse him for his tax obligations. Countercl. ¶¶ 8, 12, 13. Mr. Edde never informed the IRS that the gambling winnings actually were won by and retained by Sheikh Al–Ibrahim. *See* Countercl. ¶¶ 11, 12, 14.

Mr. Edde seeks reimbursement for the taxes he paid and compensation for breach of contract, fraud and intentional infliction of emotional distress. He maintains that "[t]o the extent Mr. Edde may have participated in an illegal act, he was not equally in the wrong with the Sheikh. Mr. Edde's payment of the Sheikh's tax obligations was solely for the benefit of the Sheikh." Countercl. ¶ 26. Sheikh Al–Ibrahim has moved to dismiss, arguing, essentially, that Mr. Edde is a dishonorable character who should not be permitted to use the federal courts to enforce an illegal contract.

The Court heard oral argument on plaintiff's motion to dismiss the counterclaim and granted the motion on August 28, 1995. This Opinion sets forth the reasons for that decision.

### A.  Breach of Contract Claim

■ Generally, a contract to perform an illegal act, such as the alleged contract between Mr. Edde and Sheikh Al–Ibrahim, is void and unenforceable. *See, e.g., Lewis & Queen v. N.M. Ball Sons,* 48 Cal.2d 141, 308 P.2d 713, 719 (1957).[1] The purpose of this

---

**1.** Mr. Edde contends that under District of Columbia choice of law principles the Court should apply Nevada and/or California law in assessing the counterclaim. At oral argument, counsel for

the Sheikh conceded the point, Tr. at 12, as he should have. *Rymer v. Pool,* 574 A.2d 283, 285–86 (D.C.1990); *Moore v. Ronald Hsu Const. Co., Inc.,* 576 A.2d 734, 737 (D.C.1990); *Hercules &*

rule is to prevent wrongdoers from using or abusing the legitimate judicial process to resolve disputes over their illegal undertakings. *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306, 105 S.Ct. 2622, 2626, 86 L.Ed.2d 215 (1985). Whether an action is brought in equity or at law, "neither party to an illegal contract will be aided by the court, whether to enforce it or to set it aside. If the contract is illegal, affirmative relief against it will not be granted at law or in equity...." *United States v. Farrell*, 606 F.2d 1341, 1348–49 (D.C.Cir.1979) (quoting *St. Louis R.R. v. Terre Haute R.R.*, 145 U.S. 393, 407, 12 S.Ct. 953, 957, 36 L.Ed. 748 (1892)). The rule denying recovery is "based on *public policy* rather than a desire to benefit or punish either party." *United States v. Farrell*, 606 F.2d at 1349 (emphasis in original); *see Crylon Steel Co. v. Globus*, 185 F.Supp. 757, 760 (S.D.N.Y.1960) ("[w]here ... a transaction is a fraud upon the public and is contrary to public policy ... courts will leave the parties where it finds them.")

■ The courts of California and Nevada have recognized two exceptions to this otherwise accepted rule that fraud or illegality renders contracts unenforceable. A party who performed under an illegal contract may recover from a breaching party only if: (1) permitting relief to the non-breaching party would promote enforcement of the underlying law that led to the invalidity of the contract, or (2) denying relief would result in a harsh forfeiture when weighed against the seriousness of the illegality or the relative culpability of the parties. *See Homestead Supplies v. Executive Life Insurance Co.*, 81 Cal.App.3d 978, 147 Cal.Rptr. 22, 29 (1978); *Magill v. Lewis*, 74 Nev. 381, 333 P.2d 717, 719 (Nev.1958). Applying these principles,

the Court must consider the nature and the degree of the illegality, the public policy or policies to be served by enforcing or by refusing to enforce the contract, and the relative culpability of the parties. *Homestead Supplies v. Executive Life Insurance Co.*, 147 Cal.Rptr. at 29; *Magill v. Lewis*, 333 P.2d at 719; *see* 6A CORBIN ON CONTRACTS (1962) § 1534 (1962 and 1994 Supp.).

■ While not denying that his conduct was illegal, Mr. Edde argues that his conduct was not terribly serious compared with that of Sheikh Al–Ibrahim. Under a comparative culpability analysis, he contends that because the Sheikh avoided his tax obligation entirely while Mr. Edde paid the IRS, the Sheikh is the real culprit in the case. Indeed, at oral argument, counsel for Mr. Edde repeatedly argued that what Mr. Edde did was to make a "lawful payment" to the IRS. Tr. at 14. He therefore maintains that the Sheikh is the more culpable and that public policy would be served by holding the Sheikh liable in contract. He relies on *Homestead Supplies* and *Magill v. Lewis*.

Mr. Edde's characterization of this aspect of his conduct as lawful must be rejected. A United States citizen, Mr. Edde made false statements to the Internal Revenue Service in an effort to frustrate the lawful and timely collection of taxes. The fact that Mr. Edde ultimately paid the IRS does not excuse his behavior. According to the facts alleged in his own counterclaim, he broke the law.[2] To enforce the contract between Mr. Edde and Sheikh Al–Ibrahim would be to excuse Mr. Edde's conduct, to enforce a contract that had as its purpose the commission of illegal acts, and to permit the judicial process to be used in violation of public policy. *See Dent v. Ferguson*, 132 U.S. 50, 66, 10 S.Ct. 13, 19, 33

*Co., Ltd. v. Shama Restaurant Corp.*, 566 A.2d 31, 40 (D.C.1989); *see* RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 145, 188 (1971 and 1988 Supp.).

The District of Columbia's interest in this action is slight. Washington, D.C., is mentioned only once in the counterclaim as one of several locations where Sheikh Al–Ibrahim made promises to Mr. Edde. Countercl. ¶ 18. Most of the conduct underlying Mr. Edde's claims is alleged to have taken place in California, Nevada or at unspecified locations; Mr. Edde's injuries are largely alleged to have taken place in California;

and Mr. Edde lives in California and the Sheikh lives outside of the United States. The Court need not resolve whether it would be more appropriate to apply California or Nevada law because the law of those two states is consistent on all the relevant issues.

2. If Mr. Edde's allegations are accepted as true, then he attempted to evade and defraud the IRS in violation of the Internal Revenue Code. *See, e.g.,* 26 U.S.C. §§ 7201, 7202, 7203, 7206. *See* Countercl. ¶¶ 7–14.

L.Ed. 242 (1889); *Maryland v. Baltimore & Ohio R.R. Co.,* 44 U.S. (3 How.) 534, 546, 11 L.Ed. 714 (1845); *California Chicks, Inc. v. Viebrock,* 254 Cal.App.2d 638, 62 Cal.Rptr. 269, 271 (1967). Mr. Edde's breach of contract claim is dismissed.

## B. Restitution

■ Mr. Edde contends that even if he is not entitled to damages for breach of contract, he should be permitted to maintain an action for restitution to ensure that the Sheikh is not unjustly enriched for his unlawful acts. He argues that he and the Sheikh were not equally culpable or *in pari delicto* (of equal fault). He asserts that he was induced, if not coerced, to take part in the illegal conduct by the influence of Sheikh Al-Ibrahim's superior economic and bargaining position. He insists that he was not a "free agent." *See Karpinski v. Collins,* 252 Cal. App.2d 711, 60 Cal.Rptr. 846 (1967); *McAllister v. Drapeau,* 14 Cal.2d 102, 92 P.2d 911 (1939); *San Diego Prestressed Concrete Co. v. Chicago Title Ins. Corp.,* 92 Nev. 569, 555 P.2d 484, 487 (1976); 6A CORBIN ON CONTRACTS § 1537 (1967 and 1994 Supp.). Mr. Edde maintains that he is entitled to restitution because the Sheikh masterminded the tax avoidance scheme and was the only one who profited from it. *See Asdourian v. Araj,* 38 Cal.3d 276, 211 Cal.Rptr. 703, 712–13, 696 P.2d 95, 105 (1985) (citing *Southfield v. Barrett,* 13 Cal.App.3d 290, 91 Cal.Rptr. 514 (1970)). Indeed, Mr. Edde argues that as a result of this illegal scheme, his own finances were substantially depleted.

There is no mechanical rule by which to determine whether one party to an illegal contract is *in pari delicto* with another party to the contract. In considering the question on a motion to dismiss, the Court must accept the allegations made by the pleader. The Court therefore accepts Mr. Edde's assertion that the Sheikh had a strong influence over him that enabled the Sheikh to make unusually burdensome demands, that the Sheikh expressed in angry terms his insistence that Mr. Edde sign for his gambling winnings, that Mr. Edde believed that signing for the winnings was a condition of his continued employment (although there is

no allegation that the Sheikh threatened to fire him if he did not), and that Sheikh Al-Ibrahim was able to induce Mr. Edde's illegal conduct because of his superior economic position in the relationship. Countercl. ¶¶ 7, 9.

If the remedy of restitution originates from the Court's equitable powers, then the Court is guided by the principle that "he who comes to equity must come with clean hands." *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945). The doors of a court of equity are traditionally closed to one who acted inequitably, in bad faith or illegally in relation to the matter as to which he seeks relief; "however improper may have been the behavior of the defendant," the court will not be "the abettor of inequity." *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.,* 324 U.S. at 814, 65 S.Ct. at 997 (quoting *Bein v. Heath,* 47 U.S. (6 How.) 228, 247, 12 L.Ed. 416 (1848)); *see Blain v. The Doctor's Co.,* 222 Cal.App.3d 1048, 272 Cal.Rptr. 250, 258–59 (1990); *see McAdam v. Dean Witter Reynolds,* 896 F.2d 750, 756–57 (3d Cir.1990) (citing *Rothberg v. Rosenbloom,* 808 F.2d 252, 256 n. 6 (3d Cir.1986), *cert. denied,* 481 U.S. 1017, 107 S.Ct. 1895, 95 L.Ed.2d 501 (1987)).

If restitution is an action brought at law, as most courts and commentators maintain, *see* W. PAGE KEETON ET AL., PROSSER AND KEETON ON TORTS § 94, at 672–75 (5th ed. 1984 and 1988 Supp.), then the Court is guided by similar principles to those that bar Mr. Edde's breach of contract claim. In a case involving a void, unenforceable contract, restitution is available only in exceptional circumstances. The cases cited by Mr. Edde do not provide support for the proposition that the exception should be invoked in this case.

In *Homestead,* for instance, the Court ruled against an insurance company that agreed to accept a lower premium than the legal premium prescribed in its rate table, explaining that the company should have known of the illegality, while there was no reason to find that the insured should have known. *Homestead Supplies v. Executive*

*Life Insurance Co.,* 147 Cal.Rptr. at 29. By way of contrast, Mr. Edde knew that he was misleading the IRS in reporting the Sheikh's gambling winnings as his own and he should have known that making false statements to the IRS is illegal. In *Karpinski,* the Court concluded that the parties were not *in pari delicto* because the small dairyman who had been forced to pay a bribe in order to keep his milk contract had virtually no economic alternative but to pay the bribe. *Karpinski v. Collins,* 60 Cal.Rptr. at 848. While Mr. Edde maintains that his participation in the illegal contract was a condition of his job, his counterclaim is very carefully drafted. It alleges only that he *"clearly understood* that his signing for the Sheikh's gambling winnings was a condition of his employment and that if he refused to do so, he would be discharged." Countercl. ¶ 9 (emphasis added). He does not allege that he was ever threatened with loss of employment and does not set forth any facts, only conclusory statements, from which the Court could infer that he was truly under economic duress or that he lacked an economic alternative to working for Sheikh Al–Ibrahim. Mr. Edde's claim for restitution is dismissed.

### C. Fraud

█ In order to state a *prima facie* case of fraud under California and Nevada law, a party must allege: (1) a misrepresentation of a material fact, (2) knowledge of the falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damages. *Williams v. Wraxall,* 33 Cal.App. 4th 120, 39 Cal.Rptr.2d 658, 664 n. 9 (1995); *Blanchard v. Blanchard,* 108 Nev. 908, 839 P.2d 1320, 1322 (1992). In the federal courts, the circumstances constituting an alleged fraud must be pleaded with particularity. Rule 9(b), Fed.R.Civ.P. The pleader must specify "what statements were made in what documents or in what context, the time and place of such statements, who made the statements, the manner in which the statements were misleading, and what the defendants obtained as a consequence of the statements." *In re Newbridge Networks Securities Litigation,* 767 F.Supp. 275, 282 (D.D.C. 1991); *see Kowal v. MCI Communications Corp.,* 16 F.3d at 1278.

█ Mr. Edde alleges that the Sheikh made promises to him in order to induce him to sign for and pay the Sheikh's taxes, that these promises were made after Mr. Edde had tendered his resignation, that these promises were false at the time they were made and were made for the purpose of inducing reliance by Mr. Edde, that Sheikh Al–Ibrahim had a motive for defrauding Mr. Edde, that Mr. Edde relied on the promises, and that Mr. Edde was damaged as a result. Countercl. ¶¶ 8, 12, 13, 18, 19, 22. These allegations are sufficient for the Court to draw an inference of fraud even under Rule 9(b). *See Kowal v. MCI Communications Corp.,* 16 F.3d at 1278; *Stebbins v. Keystone Ins. Co.,* 481 F.2d 501, 511 (D.C.Cir.1973). Whether Mr. Edde's allegations can be proven at trial is not the issue before the Court. The allegations in the counterclaim are sufficiently pled and he has said enough to withstand a motion to dismiss.

On the other hand, fraud is an equitable remedy, and "he who comes into equity must come with clean hands." *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.,* 324 U.S. at 814, 65 S.Ct. at 997; *Fibreboard Paper Products Corp. v. East Bay Union of Machinists,* 227 Cal. App.2d 675, 39 Cal.Rptr. 64 (1964); *see Locken v. Locken,* 98 Nev. 369, 650 P.2d 803, 805 (1982). Thus, "equity requires that those seeking its protection shall have acted fairly and without fraud or deceit as to the controversy in issue." *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.,* 324 U.S. at 814–15, 65 S.Ct. at 997; *see Blain v. The Doctor's Co.,* 272 Cal.Rptr. at 258–59. In this case, in order to allege fraud, Mr. Edde has admitted his own involvement in serious illegal conduct. His hands are not washed clean merely because he paid money to the IRS. The very facts alleged in his counterclaim lead to the inescapable conclusion that Mr. Edde has not displayed that standard of conduct in his agreement with the Sheikh that entitles him to maintain an equitable action for fraud. That Sheikh Al–Ibrahim's conduct may have been worse is irrelevant. *McAdam v. Dean Witter Reynolds,* 896 F.2d at 756–57.

### D. Intentional Infliction of Emotional Distress

 The tort of intentional infliction of emotional distress was created to punish conduct "exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress." *Agarwal v. Johnson*, 25 Cal.3d 932, 160 Cal.Rptr. 141, 149–50, 603 P.2d 58, 67 (1979) (internal quotation omitted). A *prima facie* case requires allegations of (1) outrageous conduct by the defendant, (2) an intention by the defendant to cause, or the reckless disregard of the probability of causing, emotional distress, (3) severe emotional distress, and (4) an actual and proximate causation of the emotional distress. *Christensen v. Superior Court*, 54 Cal.3d 868, 2 Cal.Rptr.2d 79, 100, 820 P.2d 181, 202 (1991); *Star v. Rabello*, 97 Nev. 124, 625 P.2d 90, 92 (1981).

 There are two problems with Mr. Edde's emotional distress claim. First, the alleged outrageous conduct is not so extreme as to exceed all bounds of that usually tolerated in a civilized society. The fact that Mr. Edde may have suffered real distress as a result of his dealings with Sheikh Al–Ibrahim and his pursuit by the IRS does not render the Sheikh's alleged conduct extreme and outrageous. To the extent that the Court is able to identify the conduct of which Mr. Edde complains, it appears that Mr. Edde has simply alleged a breach of contract and fraud. Indeed, when asked at oral argument which allegations in his counterclaim related to the intentional infliction of emotional distress claim, counsel for Mr. Edde explained that "Sheikh [Al–Ibrahim] knew ... that Edde did not have the resources to pay these monies ... that Edde had entered into this agreement with the prospect that he would be paid back ... that Edde was suffering ... and he ignored [Mr. Edde's pleas]." Tr. at 14. Accepting Mr. Edde's allegations as true for purposes of this motion, the Sheikh's conduct is not so outrageous as to meet the test announced by the courts of California and Nevada. *See Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 156 Cal.Rptr. 198, 206, 595 P.2d 975, 983 (1979); *Star v. Rabello*, 625 P.2d at 92.

Second, a cause of action for intentional infliction of emotional distress, like Mr. Edde's other equitable claims, is barred by the defense of unclean hands. *Blain v. The Doctor's Co.*, 272 Cal.Rptr. at 258; *see Locken v. Locken*, 650 P.2d at 805. Mr. Edde's emotional distress is directly attributable to his own knowing illegal conduct; it stems from his own illegal agreement with the Sheikh and his own misrepresentations to the IRS. *Camp v. Jeffer, Mangels, Butler & Marmaro*, 35 Cal.App.4th 620, 41 Cal.Rptr.2d 329, 340 (1995); *Fibreboard Paper Products Corp. v. East Bay Union of Machinists*, 39 Cal.Rptr. at 96–97. Because Mr. Edde comes before the Court with unclean hands, his claim for intentional infliction of emotional distress is dismissed.

### CONCLUSION

For these reasons, plaintiff's motion to dismiss defendant's counterclaim is granted. An Order Consistent with this Opinion was entered on August 28, 1995.

SO ORDERED.