[Civ. No. 5933.   Third Appellate District.—October 29, 1937.]

M. BURNETT SONTAG et al., Appellants, v. E. C. DENIO et al., Respondents.

Pease & Dolley and Adolph H. Levy for Appellants.

Denio, Hart, Taubman & Simpson for Respondents.

THOMPSON, J.—The plaintiffs have appealed from a judgment which was rendered against them following an

order sustaining defendants' demurrer to the complaint without leave to amend the pleading. The complaint alleges fraud on the part of the defendants in procuring from the plaintiffs a deed of conveyance to their real property and extrinsic fraud in preventing them from appearing or answering a complaint filed by the defendants in a proceeding to declare the deed to be a mortgage and to foreclose that instrument. The complaint in this action seeks to annul the deed and to set aside the judgment of foreclosure on the ground of extrinsic fraud. The demurrer was sustained on the theory that the complaint affirmatively shows that the plaintiffs and defendants were guilty of collusion and fraud in the transaction which is involved to defeat a creditor of plaintiffs, and that since they were *in pari delicto* a court of equity will not interfere. The refusal to accept jurisdiction is based on the maxim that "he who comes into a court of equity must come with clean hands".

The complaint alleges that the plaintiffs, who are husband and wife, are the owners of four parcels of land in Los Angeles County of the value of $20,000, subject to a mortgage of $4,000; that the defendants, Denio, Hart, Taubman & Simpson constitute a law firm which is engaged in practicing law at Los Angeles; that they were employed by the plaintiffs as their attorneys in the entire transaction concerning the real property which is involved in this suit, and that a confidential relationship thereby existed between the parties to this action with relation thereto; that plaintiffs are indebted to their said attorneys for services performed in the sum of $400 and no more; that on November 17, 1933, a judgment for the sum of $10,000 was rendered in a suit against plaintiffs in the Superior Court of Los Angeles County, in which said attorneys appeared for the plaintiffs; that prior to the docketing of that judgment their said attorneys advised plaintiffs to convey to them the real property so as to defeat the $10,000 judgment, and that the attorneys stated to plaintiffs that they would represent to the creditor that the conveyance was made to them in consideration of legal services performed of the value of $7,500; that said last-mentioned claim of $7,500 is fictitious; that in compliance with the advice and representations on the part of their attorneys that they would hold the title to the property "for the account and benefit of the plaintiffs and reconvey

the same to plaintiffs upon request'', a deed of conveyance of the property was duly executed and delivered to Geo. A. Hart, one of the attorneys, on December 9, 1933, but that plaintiffs continued to hold possession of the property and to collect all rents therefrom, until recently when they were restrained in a subsequent suit by defendants from collecting rents; that on May 15, 1934, the $10,000 judgment against the plaintiffs was vacated, and thereafter, on demand of the plaintiffs, the properties were reconveyed to them by deed from Geo. A. Hart, dated December 18, 1934, but that plaintiffs failed to record the deed; that in January, 1935, the Indemnity Insurance Company of North America brought suit against the plaintiffs in Los Angeles County and attached their said real property; that the defendants continued to represent plaintiffs in that action, and then induced them to deliver to the defendant George A. Hart, the unrecorded reconveyance deed to their properties; that they would ''hold the real property herein described and assert their fictitious rights in and to the same under the deed'' to Hart dated November 19, 1933, ''and that they would upon request of M. Burnett Sontag reconvey the property to him or his nominee''; that relying upon the representations of their attorneys, plaintiffs did surrender and deliver to the said Hart the unrecorded deed on January 15, 1935; that thereafter the attorneys represented to plaintiffs that in order to defeat the claim of the insurance company against plaintiffs, it would be necessary for them to bring a friendly suit against plaintiffs to declare the deed to their properties to be a mere equitable mortgage to secure the fictitious claim for fees in the sum of $7,500 and to foreclose that mortgage, and advised the plaintiffs not to appear or answer that complaint, but on the contrary permit judgment to be rendered against them by default, but that the said Hart would thereafter, upon request reconvey the property to plaintiffs; that relying on the representations made by their attorneys, the plaintiffs failed to appear or answer in the foreclosure suit, and judgment was rendered against them for the sum of $7,500 and the property was sold to the defendants at foreclosure sale pursuant to law to satisfy the judgment; that thereafter the defendants informed plaintiffs that to make it appear to the insurance company that defendants were the *bona fide* owners of the land, it would be necessary for them to assert a right

to collect the rents from the property, and to the possession thereof, and accordingly an action was brought and a judgment rendered against plaintiffs in July, 1935, restraining them from asserting possession or collecting rents from the property; that the plaintiffs then, for the first time, discovered that the defendants were wrongfully claiming absolute title to the property, and plaintiffs then demanded of the defendants a reconveyance thereof, which was refused. This suit was commenced November 30, 1935. A demurrer was filed on the ground that the complaint fails to state facts sufficient to constitute a cause of action. The demurrer was sustained without leave to amend. From the judgment which was accordingly rendered the plaintiffs have appealed.

For the sole purpose of determining the merits of the demurrer, we must assume that the facts related in the complaint are true. We realize that a very different set of facts may appear from an answer or from proof adduced at the trial.

From the preceding statement of the allegations of the complaint it appears that the pleading does state a cause of action based upon extrinsic fraud to rescind the deed of conveyance, set aside the judgment of foreclosure and to declare that the defendants hold the real property in trust for the benefit of plaintiffs, except that the complaint probably should allege that plaintiffs have offered to do equity or are willing to tender to the defendants the amount of fees which are due to them. The complaint admits that plaintiffs actually owe the defendant $400 as attorneys' fees. This suggestion is in compliance with the equitable principle that "he who seeks equity must do equity".

The complaint clearly alleges a fiduciary relationship of attorneys and clients between plaintiffs and defendants in the transaction which is involved. The complaint also clearly alleges facts which amount to extrinsic fraud consisting of conduct on the part of plaintiffs' attorneys which, if true, prevented them from appearing or answering in the foreclosure suit, and which precluded them from participating in the trial of that case. That conduct amounts to extrinsic fraud against which equity will ordinarily relieve the injured party. (*Jeffords* v. *Young,* 98 Cal. App. 400, 404 [277 Pac. 163]; *Baker* v. *Baker,* 217 Cal. 216 [18 Pac. (2d) 61].)

The fact that the plaintiffs failed to avail themselves of the remedy provided by section 473 of the Code of Civil

Procedure to relieve them from the alleged invalid judgment which was rendered in the foreclosure procedure, or the injunction proceeding, does not prevent them from maintaining this equitable action. The remedies for relief from a judgment procured by alleged fraud provided by section 473 and an ordinary suit in equity are entirely distinct and cumulative. The failure to resort to the first-mentioned remedy does not necessarily bar the right to maintain an equitable action under the circumstances of this case. (*Jeffords* v. *Young, supra.*)

The demurrer was sustained and the judgment was rendered in this case on the theory that the plaintiffs and defendants entered into collusion and wrongfully participated in the transactions described in the complaint for the purpose of defrauding the creditors of the plaintiffs. It is true that ordinarily a court of equity will not grant relief to either party to an action to set aside a judgment which has been procured by fraudulent collusion between them. (*Fonner* v. *Martens,* 186 Cal. 623 [200 Pac. 405]; *Bruno* v. *Guglielmo,* 113 Cal. App. 148 [297 Pac. 967]; *Mitchell* v. *Cline,* 84 Cal. 409 [24 Pac. 164]; *Bancroft* v. *Bancroft,* 178 Cal. 359 [173 Pac. 579, L. R. A. 1918E, 1029]; 1 Black on Judgments, 2d ed., p. 448, sec. 294.)

There appears to be a well-recognized exception to the rule last stated. When the parties to the fraudulent transaction occupy a fiduciary relationship in regard thereto, such as client and attorney, and the client relies upon the advice and counsel of his attorney with relation thereto, it is held that the client is not *in pari delicto* with his attorney. Under such circumstances the attorney is deemed to be more culpable than his client, and equity may then relieve the client from the burden of an unjust and fraudulent judgment thus procured. (*Clark* v. *Millsap,* 197 Cal. 765, 783 [242 Pac. 918].) In the case last cited, which was a suit instituted by a client against her attorney to compel an accounting of moneys turned over to him to defraud her creditors, the court said:

"The commonplace maxims of equity, 'he who seeks equity must do equity' and 'he who comes into a court of equity must come with clean hands' have no application to the facts adduced in the instant case. *Certainly the law will not hold a client in pari delicto with her attorney who, acting under his*

*influence and advice, places her property in his name and possession for purposes of concealment.* As between the two the client is not, in the eyes of the law as culpable as the legal adviser. *Herrick* v. *Lynch,* 150 Ill. 283 [37 N. E. 221] lays down the true rule in such cases. It is there said:

" 'We do not think, however, that under the circumstances there should be an application of that rule of equity which denies relief to one party against another when both have been engaged in a fraudulent transaction. The parties were not *in pari delicto.* One was legal adviser, the other client. The advice of the former being adopted, he procured title to the latter's interest in valuable real estate. Equity will not tolerate the idea that an attorney may make use of his peculiar power over his client to procure a contract which is illegal and contrary to public policy, and then invoke the aid of the law to enable him to retain that which he has obtained through his fraudulent artifices.' "

The confidential relationship which existed in the present case was not involved in any of the cases above cited upon which the respondents rely in support of the equitable doctrine which denies relief to parties to an illegal or fraudulent transaction who are *in pari delicto.* In the case of *Fonner* v. *Martens, supra,* at page 628, the court says: "The relations of the parties were not confidential." In the case of *Bruno* v. *Guglielmo, supra,* it appears that a nonsuit was granted because no fraud was proved at the trial. The purchaser of land at a foreclosure sale had not refused to keep his promise to reconvey the land to the owner thereof. He had not been asked to do so. The court says:

*"There is nothing tending to indicate* that the judgment was entered contrary to such understanding of the parties, that *the mortgagee would decline, or had been requested, to reconvey* at the time agreed upon, *nor that the mortgagors would be precluded from demanding a reconveyance in appropriate proceedings."*

In the case of *Bancroft* v. *Bancroft, supra,* the question of confidential relations between an attorney and his client was not involved. That fact alone distinguishes that case from the present one. There was no extrinsic fraud in the Bancroft case. The wife was present with her attorney at the hearing of the divorce case. It is true that the husband falsely testified at the trial regarding material matter, but that has

been held to be intrinsic fraud, rather than extrinsic fraud. A judgment may not be collaterally attacked on the ground of intrinsic fraud. (*Pico* v. *Cohn,* 91 Cal. 129 [25 Pac. 970, 27 Pac. 537, 25 Am. St. Rep. 159, 13 L. R. A. 336] ; *Hanley* v. *Hanley,* 114 Cal. 690 [46 Pac. 736] ; *Clavey* v. *Loney,* 80 Cal. App. 20 [251 Pac. 232] ; 15 Cal. Jur., p. 18, sec. 124.)

The judgment is reversed, and the court is directed to permit the appellants to amend their complaint as suggested herein.

Pullen, P. J., and Plummer, J., concurred.