Filed 10/28/15  Chuang v. Chang CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| KEITH CHUANG et al.<br><br>        Plaintiffs and Appellants,<br><br>    v.<br><br>ALBERT CHANG et al.,<br><br>        Defendants and Respondents. | B257818<br><br>(Los Angeles County<br>Super. Ct. No. GC050205) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Donna F. Goldstein, Judge.  Affirmed.

The Business Legal Group and Russell M. Frandsen; The Holmes Law Firm and Reginald A. Holmes for Plaintiffs and Appellants.

Jacks & Maybaum, Jerid R. Maybaum and Jane E. Randolph for Defendants and Respondents.

Plaintiffs and appellants Keith Chuang (Chuang), Anne Chuang, and Jim Y. Chuang (collectively, plaintiffs) appeal from the judgment entered in favor of defendants and respondents Albert Chang, William Lai, and Chang & Cote LLP (collectively, defendants) in this action for legal malpractice, breach of fiduciary duty, breach of contract, and violation of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) (CLRA). We affirm the judgment.

## FACTUAL BACKGROUND

Plaintiffs retained defendants in 2006 for legal representation in a real estate sales transaction in which plaintiffs sought to defer taxes on the sale proceeds. The real property plaintiffs wished to sell (the property) was owned by Cetus Enterprises, Inc. (Cetus), a corporation in which plaintiffs were the sole shareholders.

As part of the tax deferral plan, defendants formed Stanton, Inc. (Stanton), a new corporation also wholly owned by plaintiffs. Defendants also formed two private annuity trusts and drafted two annuity agreements. In September 2006, Cetus transferred the property to Stanton. Plaintiffs transferred their shares in Stanton to the private annuity trusts in exchange for the trusts' promises to pay plaintiffs an annuity in accordance with the terms of the annuity agreements. Stanton sold the property to a third party, and proceeds from the sale were distributed to plaintiffs through their private annuity trusts.

In 2009, plaintiffs informed defendants that the Franchise Tax Board was auditing plaintiffs' 2006 tax returns. At plaintiffs' request, defendants met with plaintiffs' accountant and tax advisor, Pennywiser Accountancy Corp., in September and October of 2009 to explain the private annuity trust transaction and to provide Pennywiser with information to respond to the audit. Defendants also revised the private annuity trust agreements and drafted corporate minutes for Cetus and Stanton, escrow agreements, and grant deeds. All of the documents defendants drafted in 2009 bore dates of 2006. Those documents were signed by plaintiffs in 2009, although certain of the documents bore a notary jurat indicating that they had been signed in 2006.

The Franchise Tax Board ultimately concluded that the transaction resulted in a taxable event in 2006 and assessed taxes and interest against plaintiffs for that tax year.

## PROCEDURAL BACKGROUND

### First amended complaint and demurrer

Plaintiffs commenced the instant action on September 25, 2012. In the operative first amended complaint, plaintiffs asserted causes of action for violation of the CLRA, professional negligence, breach of fiduciary duty, and breach of contract. They alleged that defendants' actions caused them to incur damages of more than $700,000 in taxes, penalties, and interest payable to the Franchise Tax Board and the Internal Revenue Service.

Defendants filed a demurrer and motion to strike, and the trial court sustained the demurrer, without leave to amend, as to the CLRA cause of action.

### Motion in limine regarding expert testimony

Before the trial commenced, defendants filed a motion in limine to preclude plaintiffs' legal malpractice expert, Stephen Callister (Callister), from offering opinions not given during his deposition and from testifying regarding documents he had not reviewed prior to his deposition. The trial court granted the motion, ruling that Callister could not testify with respect to any documents he had not reviewed prior to his deposition, including plaintiffs' tax returns and documents pertaining to the Franchise Tax Board audit.[1]

### Plaintiffs' opening statement and nonsuit on breach of fiduciary duty claim

During opening statement, plaintiffs' counsel told the jury that the evidence would show "that there was backdating of documents in violation of criminal statutes imbued in the mistakes that the defendants made" and that defendants "concocted this scheme to prepare false documents . . . to backdate false documents and send those false documents to the Franchise Tax Board in an effort to deceive the Franchise Tax Board." Plaintiffs' counsel told the jury that "[t]he evidence will show that these defendant lawyers drafted false deeds reporting the transfer of real estate to . . . private annuity trusts" despite the

---

[1] The record on appeal does not include the trial court's ruling on the motion in limine; however, plaintiffs do not challenge that ruling.

3

fact that "the real estate had actually been sold three years before." Counsel stated that when plaintiffs told the lawyers "it doesn't seem quite right," defendants said "don't worry about it." Plaintiffs' counsel then stated that the jury would "see proof that various criminal statutes have been violated" and that various statutory provisions were violated with "false statements," "dishonesty, fraud," and "deceit."

At the conclusion of plaintiffs' opening statement, defendants moved for nonsuit based on the doctrines of unclean hands and in pari delicto. Defendants argued that plaintiffs' counsel had told the jurors that plaintiffs had knowingly participated in a scheme to present false documents to the Franchise Tax Board. After taking the matter under submission, the court issued a tentative decision to sustain the motion for nonsuit, but continued the matter to the following day to allow plaintiffs the opportunity to present a written opposition.

In their written opposition, plaintiffs moved to reopen or augment their opening statement. The trial court denied the motion, noting that this was not a case in which the essential elements of a claim had been omitted from the opening statement, but rather one in which "too much was said in the opening statement." The trial court granted the motion for nonsuit as to the breach of fiduciary duty claim on the ground that plaintiffs participated in signing and submitting backdated documents to the Franchise Tax Board -- conduct that they claimed was a criminal act.

**Plaintiffs' case-in-chief and nonsuit on remaining claims**

In their case-in-chief, plaintiffs presented the testimony of several witnesses, including their legal malpractice expert, Callister. After plaintiffs rested, defendants moved for nonsuit on various grounds, including the statute of limitations and failure to establish causation and damages.

Plaintiffs then moved to reopen their case in chief to present additional expert testimony on causation and damages and additional witnesses on the statute of limitations defense. The trial court denied the nonsuit motion on statute of limitations grounds and for that reason denied plaintiffs' request to present additional witnesses on that issue.

4

The court granted plaintiffs' motion to reopen their case in chief to present additional expert testimony on causation and damages.

Plaintiffs recalled their expert, Callister, subject to the trial court's previous in limine ruling precluding testimony concerning documents not reviewed prior to his deposition or opinions not given in deposition. At the conclusion of Callister's testimony, defendants again moved for nonsuit on the ground that plaintiffs failed to establish causation and damages.

The trial court noted that plaintiffs' claimed damages were the additional taxes imposed by the Franchise Tax Board. The court further noted that Callister had never reviewed the Franchise Tax Board rulings, and therefore could offer no opinion as to what caused the taxable event that resulted in the assessment against plaintiffs. Because there was insufficient expert testimony as to causation and damages, the court granted nonsuit on the remaining causes of action for legal malpractice and breach of contract. Plaintiffs then moved a second time to reopen their case-in-chief, and the trial court denied that motion.

**Judgment and appeal**

Judgment was entered in favor of defendants on July 21, 2014. 0This appeal followed.

## CONTENTIONS ON APPEAL

Plaintiffs contend the trial court erred by (1) granting nonsuit on their breach of fiduciary duty claim after their opening statement and denying their request to augment their opening statement; (2) granting nonsuit on their breach of contract and professional negligence causes of action and denying their second request to reopen their case-in-chief; and (3) sustaining defendants' demurrer, without leave to amend, as to the CLRA cause of action.

5

# DISCUSSION

## I. Nonsuit on breach of fiduciary duty claim

### A. *Standard of review*

"'The standard of review for a nonsuit after [the] conclusion of the opening statement is well settled. Both the trial court in its initial decision and the appellate court on review of that decision must accept all facts asserted in the opening statement as true and must indulge every legitimate inference which may be drawn from those facts. [Citations.]" (*Galanek v. Wismar* (1999) 68 Cal.App.4th 1417, 1424.)

### B. *Unclean hands bars plaintiffs' breach of fiduciary duty claim*

Unclean hands is an equitable doctrine that is invoked as a complete affirmative defense if the plaintiff has engaged in inequitable conduct in connection with the matter in controversy. (*Dickson, Carlson & Campillo v. Pole* (2000) 83 Cal.App.4th 436, 446.) For the doctrine to apply, the plaintiff's misconduct "must relate directly to the transaction concerning which the complaint is made, i.e., it must pertain to the very subject matter involved and affect the equitable relations between the litigants." (*Fiberboard Paper Prods. Corp. v. East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 728-729 (*Fiberboard*).) While "[n]ot every wrongful conduct constitutes unclean hands . . . the misconduct need not be a crime or an actionable tort. Any conduct that violates conscience, or good faith, or other equitable standards of conduct is sufficient cause to invoke the doctrine [Citations.]" (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 979 (*Kendall-Jackson*).)

"The unclean hands doctrine protects judicial integrity and promotes justice. It protects judicial integrity because allowing a plaintiff with unclean hands to recover in an action creates doubts as to the justice provided by the judicial system. Thus, precluding recovery to the unclean plaintiff protects the court's, rather than the opposing party's, interests. [Citations.]" (*Kendall-Jackson, supra,* 76 Cal.App.4th at p. 978.) In a legal malpractice action, a client's unclean hands is a defense to claims against the attorney. (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658; *Blain v. Doctor's Co.* (1990) 222 Cal.App.3d 1048, 1057 (*Blain*).)

6

*Blain* involved facts similar to those presented here. The plaintiff in that case, a physician named Blain, filed a legal malpractice action against the attorneys who represented him in an underlying medical malpractice lawsuit. Blain alleged that during his deposition in the medical malpractice lawsuit, his lawyers instructed him to not tell the truth, to withhold information requested from him, and to deny knowledge of certain conversations, even if he had specific recollection of those conversations. (*Blain, supra*, 222 Cal.App.3d at p. 1056.) Blain alleged that he followed his attorneys' advice, causing him to incur greater liability in the medical malpractice case and to suffer emotional distress. (*Id.* at pp. 1055-1057.)

The court in *Blain* observed that Blain's allegation "that he was advised to lie at his deposition and that he followed that advice resulting in harm to his interests" was an admission "that *he* committed serious misconduct which was the cause of his injuries." (*Blain, supra*, 222 Cal.App.3d at p. 1058.) In determining whether that misconduct barred Blain's claims under the doctrine of unclean hands, the court examined the analogous case law, the nature of the misconduct, and the relationship of the misconduct to the claimed injuries. (*Id.* at pp. 1060.) The court ultimately concluded that unclean hands barred the legal malpractice claim because Blain's lying was "inextricably intertwined" with the defendant attorneys' alleged misconduct. (*Id.* at pp. 1063-1064, 1065.)

Plaintiffs' conduct in the instant case is analogous to the misconduct that barred the legal malpractice claim in *Blain*. Plaintiffs knew that the documents they signed had been falsely backdated. They admitted following their attorneys' instructions to do so as part of a scheme to deceive the Franchise Tax Board. That deception was undertaken in an effort to avoid taxes assessed against plaintiffs. That tax assessment is the basis of plaintiffs' damages claim against defendants. Plaintiffs' misconduct, like the misconduct in *Blain,* is "inextricably intertwined" with the alleged misconduct by defendants and relates "directly to the transaction concerning which the complaint is made." (*Fiberboard, supra*, 227 Cal.App.2d at p. 728.)

Plaintiffs argue that *Blain* is inapposite because, unlike the plaintiff in that case, who knowingly lied under oath, they "innocently followed their lawyer's advice." Plaintiffs' claim is contradicted by their opening statement, in which their counsel stated that plaintiffs followed defendants' instructions to submit "false and backdated documents" to the Franchise Tax Board, despite knowing at the time that "it doesn't seem quite right."

Plaintiffs' reliance on *Sontag v. Denio* (1937) 23 Cal.App.2d 319 (*Sontag*) and *Clark v. Millsap* (1926) 197 Cal. 765 (*Clark*), cases distinguished by the court in *Blain*, is unavailing. Both *Sontag* and *Clark* involved lawyers who used their positions to wrongfully obtain their client's property and then invoked the doctrine of unclean hands to enable them to retain the fraudulently obtained property. (*Sontag, supra*, at pp. 321-322; *Clark, supra*, at pp. 783-784.) As the court in *Blain* observed, the "key consideration" distinguishing *Sontag* and *Clark* from the circumstances present in *Blain* "was that the lawyer would personally profit from his wrongdoing at the expense of the client if the client were left without a remedy." (*Blain, supra*, 222 Cal.App.3d at p. 1062.) Here, unlike *Sontag* and *Clark*, the alleged misconduct -- submitting falsely backdated documents to the Franchise Tax Board -- was to enable plaintiffs to avoid tax liability incurred upon the sale of their property. The doctrine of unclean hands bars them from shifting that liability to their attorneys.

The trial court did not err by concluding that plaintiffs' breach of fiduciary duty claim is barred by the doctrine of unclean hands and by granting the motion for nonsuit on that basis.

## C. *Nonsuit after plaintiffs' opening statement*

Plaintiffs contend the trial court erred by granting nonsuit after their opening statement because the affirmative defense of unclean hands involves factual determinations that are the exclusive province of the jury. A nonsuit on an opening statement may properly be granted when plaintiff's counsel discloses facts constituting an affirmative defense, such as unclean hands, as bar to the plaintiff's claims. (*Russell v. Soldinger* (1976) 59 Cal.App.3d 633, 645-646 [affirming nonsuit on opening statement

8

based on doctrine of unclean hands].) Plaintiffs' counsel during his opening statement told the jury that plaintiffs knew the documents they signed and submitted to the Franchise Tax Board were falsely backdated, facts constituting defendants' unclean hands defense. The trial court did not err by granting nonsuit on that basis. (*Ibid.*)

### D. Denial of plaintiffs' request to augment opening statement

Plaintiffs contend the trial court erred by denying their request to augment their opening statement. Plaintiffs did not argue below that they had omitted any of the facts they intended to prove at trial, nor do they now contend that their opening statement can be interpreted as anything other than a full tender of the anticipated evidence. The trial court did not err by denying plaintiffs' request to augment their opening statement. (*Addison v. Susanville Lumber, Inc.* (1975) 47 Cal.App.3d 394, 405.)

## II. Nonsuit on professional negligence and breach of contract claims

"When a business transaction goes awry, a natural target of the disappointed principals is the attorneys who arranged or advised the deal. Clients predictably attempt to shift some part of the loss and disappointment of a deal that goes sour onto the shoulders of persons who were responsible for the underlying legal work. Before the loss can be shifted, however, the client has an initial hurdle to clear. *It must be shown that the loss suffered was in fact caused by the alleged attorney malpractice.* It is far too easy to make the legal advisor a scapegoat for a variety of business misjudgments unless the courts pay close attention to the cause in fact element, and deny recovery where the unfavorable outcome was likely to occur anyway, the client already knew the problems with the deal, or where the client's own misconduct or misjudgment caused the problems." (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1241 (*Viner*), quoting Bauman, *Damages for Legal Malpractice: An Appraisal of the Crumbling Dike and Threatening Flood* (1988) 61 Temp. L.Rev. 1127, 1154-1155.)

Although a plaintiff alleging legal malpractice is not required to offer proof that establishes causation "with absolute certainty," the plaintiff must "'"introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result."'" [Citation.]" (*Viner, supra*, 30

9

Cal.4th at p. 1243.) "In the legal malpractice context, the elements of causation and damage are particularly closely linked. . . . The plaintiff has to show both that the loss of a valid claim was proximately caused by defendant attorney's negligence, and that such a loss was measurable in damages. [Citation.]" (*Hecht, Solberg, Robinson, Goldberg & Bagley LLP v. Superior Court* (2006) 137 Cal.App.4th 579, 591.)

Plaintiffs failed to make the necessary showing in this case. Their legal malpractice expert, Callister, offered no opinion, either during plaintiffs' case-in-chief, or when recalled to testify after plaintiffs were granted leave to reopen their case-in-chief, as to whether defendants' actions caused plaintiffs' claimed damages. Rather, Callister admitted that he did not know what events or circumstances triggered the Franchise Tax Board audit that culminated in plaintiffs' claimed damages. Callister also admitted that he had not reviewed plaintiffs' tax returns, any of the documents sent by the Franchise Tax Board concerning the 2009 audit of plaintiffs' tax returns, or any of the reports or findings of the Franchise Tax Board concerning the audit.

Plaintiffs argue that expert testimony was not necessary to establish causation and damages. They fail, however, to point to any other evidence in the record that would establish these two essential elements of their legal malpractice and breach of contract causes of action.[2] The trial court did not err by granting nonsuit on those causes of action.

Plaintiffs contend the trial court erred by denying their request to reopen their case-in-chief a second time, after their expert failed to establish any causal link between

---

[2]     In their opening brief, plaintiffs claim to have presented evidence that defendants' actions caused their damages and cite to various portions of the record where such evidence may be found. Plaintiffs' citations are to evidence that does not support the asserted fact. (See *Durate v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 [appellant bears the burden of showing reversible error with an adequate record and by accurate citations to the record].) A similar problem exists in defendants' appellate brief, which contains citations to their trial brief, rather than to the evidence before the trial court. (See *Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 154 [appellate court cannot review "evidence" purportedly contained in trial briefs].)

the tax liability plaintiffs incurred and any conduct by defendants.[3]  Plaintiffs offer no authority for the argument that they were entitled to a *second* opportunity to reopen their case-in-chief when they were unable to establish these necessary elements through additional expert testimony.  Plaintiffs fail to establish any abuse of discretion by the trial court in denying the motion to reopen their case-in-chief a second time.

## III. Demurrer as to CLRA claim

Plaintiffs contend the trial court erred by sustaining the demurrer, without leave to amend, as to their CLRA cause of action.  Defendants maintain their demurrer was properly sustained because plaintiffs are not "consumers" within the meaning of the CLRA.

### A. *Standard of review*

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled.  The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded.  [Citations.]  The court does not, however, assume the truth of contentions, deductions or conclusions of law.  [Citation.]  The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken.  [Citations.]' [Citation.]  However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory.  [Citation.]  And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment.  [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-

---

**3**      In the argument section of their opening brief, plaintiffs fail to mention that they made two requests to reopen their case-in-chief, and that the trial court *granted* the first request, after plaintiffs rested their case-in-chief and defendants moved for nonsuit based on failure to establish causation and damages.  After plaintiffs were allowed to present additional testimony by their legal malpractice expert, defendants renewed their nonsuit motion and plaintiffs made a *second* request to reopen.  The trial court denied that second request.

967.) The legal sufficiency of the complaint is reviewed de novo. (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790.)

### B. The CLRA

The CLRA applies to transactions that result in the "sale or lease of goods or services to any consumer." (Civ. Code, § 1770, subd. (a).) The CLRA defines the term "consumer" as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." (Civ. Code, § 1761, subd. (d).) The statute defines "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes, . . . including goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become part of real property, whether or not severable [therefrom]," and defines "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." (Civ. Code, § 1761, subd. (a) & (b).)

The CLRA does not apply to transactions involving the sale of real estate. (Civ. Code, § 1754; *McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1488.) Civil Code section 1754 provides: "The provisions of this title shall not apply to any transaction which provides for the construction, sale, or construction and sale of an entire residence or all or part of a structure designed for commercial or industrial occupancy, with or without a parcel of real property or an interest therein, or for the sale of a lot or parcel of real property, including any site preparation incidental to such sale."

### C. The demurrer was properly sustained

Plaintiffs allege that defendants violated the CLRA by falsely representing that their legal services "had characteristics, uses and benefits that such legal services did not have, namely that the services would be performed competently and yield the tax benefits to the Plaintiffs that the Defendants promised," that plaintiffs relied on such false representations, and that plaintiffs suffered resulting damages. Plaintiffs further allege that the advice sought and legal services rendered were in connection with a real estate sales transaction. The real estate plaintiffs wished to sell was owned by a corporation in which plaintiffs were the sole shareholders.

The allegations in the first amended complaint show that plaintiffs sought legal services in connection with a real estate sales transaction for business purposes. The CLRA does not apply to claims predicated on such transactions. (Civ. Code, §§ 1754, 1761, subd. (b); *McKell v. Washington Mutual, Inc., supra*, 142 Cal.App.4th at p. 1488.) That plaintiffs were individual shareholders of the business entity that sold the real property does not alter the nature of their real estate business sales transaction into one for "personal, family, or household purposes" within the meaning of the CLRA. The trial court did not err by sustaining the demurrer to plaintiffs' CLRA claim.

Plaintiffs fail to suggest how they would amend their first amended complaint to correct the defects discussed above. The burden of proving a reasonable possibility of amending the complaint to state a cause of action "is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) The trial court therefore did not abuse its discretion by sustaining the demurrer without leave to amend.

## DISPOSITION

The judgment is affirmed. Defendants are awarded their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
HOFFSTADT

13