Filed 3/28/23  Marriage of Ladow-Kenny and Kenny CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re the Marriage of ANDREA LADOW-KENNY and BRIAN KENNY. | |
| ANDREA LADOW-KENNY,<br><br>        Respondent,<br><br>v.<br><br>BRIAN KENNY,<br><br>        Appellant. | A165162<br><br>(Sonoma County Super. Ct. No. SFL-36906) |

Appellant Brian Kenny (Kenny) appeals from a postjudgment order that he pay $74,358.40 to his ex-wife Andrea Ladow-Kenny (Ladow).[1]  The family court determined that the parties' judgment of dissolution required Kenny to make monthly payments on a mortgage secured by Ladow's real property, which he failed to consistently do.  Kenny argues that (1) there was insufficient evidence to support the family court order; and (2) the family court should have considered his late-filed responsive declaration because his miscalculation of the deadline was based on excusable neglect.  We affirm.

---

[1] We refer to Brian Kenny as "Kenny" and Andrea Ladow-Kenny as "Ladow" hereafter to avoid any confusion in our discussion of the parties.

1

## BACKGROUND

Kenny and Ladow married in 2003. The couple later sought a divorce, and the court entered a judgment of dissolution in 2007. The parties incorporated an "Uncontested Dissolution Agreement," drafted by Kenny, into the judgment. The agreement stated that the parties had "enter[ed] willfully into the following agreement, in order to complete the uncontested dissolution of their marriage." The agreement identified real property located on Ginny Drive in Windsor and stated that the property "shall remain the sole property of [Ladow]. This land was wholly owned by [Ladow] at the time of marriage, and title to this land shall remain as the sole property of [Ladow]. During the course of this marriage, [Kenny] caused an encumbrance of $125,000, in the form of a first mortgage, to be issued against this land, in order to pay off bills from [Kenny's] business, Western Windows and Doors. [Kenny] agrees to complete full payment, or in other way cause to be satisfied, this mortgage, before its maturity date of 8/20/2011."

According to Ladow, a final balloon payment of $111,623.05 on the mortgage became due in July 2011. Kenny was "unable or unwilling" to make that payment, and so Ladow used $20,000 from her IRA and stock trading accounts to refinance the mortgage.

In December 2012, Kenny re-confirmed his obligation to pay the mortgage. He signed a document stating that he relinquished "any and all claim" to the Ginny Drive property in favor of Ladow, as well as "any claim to any other equity she may have, including stock accounts, IRA's, vehicles and any other personal property." Kenny wrote: "I except [*sic*] responsibility for paying the current equity loan against [Ginny Drive], until it is completely paid off. I do hereby promise to pay, at the minimum, the amount of $1,200 per month to Wells Fargo bank, until that loan is paid off."

2

According to Ladow, Kenny was "unable or unwilling" to make every monthly payment. Instead, Ladow paid $40,186.30 to cover most of the monthly minimum payments on the mortgage between 2011 and 2015.

Kenny argued that the parties' divorce was a fraud intended to help avoid his creditors. He and Ladow maintained a romantic relationship for approximately 12 years after their divorce. The relationship really ended in 2019, explained Kenny. Ladow filed a temporary restraining order (TRO) against Kenny in late 2019, which was granted. Kenny then filed a *Marvin* action[2] against Ladow. Among other claims, Kenny included a cause of action seeking to quiet title to the Ginny Drive property, and he also sought reimbursement of taxes, improvements, and expenses related to the property.

Meanwhile, the family court amended the TRO in January 2020. The amended TRO required Kenny to make monthly $1,200 mortgage payments on the Ginny Drive property, but stated that this obligation was "conditioned upon [Kenny] having unrestricted access to the property located at [Ginny Drive] until further order of the Court, without prejudice to either party's ownership claim of the property."

Kenny started living on the Ginny Drive property in 2020, though it was apparently uninhabitable because it lacks a sewer line or septic system, running water, and utilities. According to Ladow, however, Kenny again failed to make all of the monthly mortgage payments. In October 2020, Ladow requested an additional amendment to the TRO to "vacate" Kenny's access to the property because Ladow planned to sell it. The court issued a second amended TRO on October 22, and then a third amended TRO on

_____

[2] *Marvin v. Marvin* (1976) 18 Cal.3d 660, 669–671, holding that express or implied contracts between persons living together in a nonmarital relationship should be enforced, unless contracts were explicitly founded on the consideration of "meretricious sexual services."

October 23. The third amended TRO directed Kenny to remove his possessions from the property within 10 days and stated that Kenny no longer had a right to unrestricted access to the property.

Ladow sold the property in February 2021. She deducted $14,172.10 from the sale price to pay off the remaining balance on the mortgage. In January 2022, the civil court overseeing Kenny's *Marvin* action granted Ladow's motion for judgment on the pleadings on Kenny's claim seeking to quiet title to the Ginny Drive property without leave to amend because everyone agreed the property had been sold to a third party.

In November 2021, Ladow filed a request for order seeking $74,358.40 in reimbursement for payments she made on the mortgage: $20,000 for the balloon payment; $40,186.30 for monthly payments made from 2011 to 2015; and $14,172.10 for the final payoff. The hearing was scheduled for February 22, 2022. In support of her request, Ludlow submitted a declaration, the 2007 dissolution judgment, the 2012 acknowledgement signed by Kenny, the seller's statement with the mortgage payoff amount, and Kenny's verified response to a set of special interrogatories from the *Marvin* action.

Kenny filed a responsive declaration to the request, attaching a declaration with 22 exhibits. The file-stamp indicated that the response was electronically filed on February 10. Ladow filed an objection to the response, arguing that it was filed three days late and not served until several days after that.

At the hearing, the court first inquired about the lateness of Kenny's response. Kenny testified under oath that he had asked the family law facilitator's office whether his deadline was nine days before the hearing. The office had confirmed that it was nine days but did not elaborate that the deadline was in *court* days. The court found that Kenny's response was

4

untimely filed and sustained the objection.  It stated:  "the Court is going to disregard what is in that reply, however, that does not mean that that evidence that is in that reply cannot come in in some other manner."

After argument from Ladow's counsel, the court explained to Kenny that it was "his opportunity to respond to the moving papers as well as the argument produced today."  Kenny stated that he disputed any obligation to pay the mortgage because he and Ladow had "engineered" a "scam divorce" in order to protect assets from his business creditors.  Kenny stated that it was "impossible" to determine what he paid or didn't pay on the mortgage because the parties' money was "commingled."  He also opined that the $20,000 from the IRA and stock trading accounts was "community property" because he had earned the money in those accounts from his own trading.  Kenny testified that he did not make mortgage payments in mid-2020 because the bank did not require them as a result of the COVID pandemic.  Kenny also objected to the lack of documentary evidence to support the specific amounts Ladow said she had paid on the mortgage.

The court found that the 2007 dissolution judgment, which incorporated the "Uncontested Dissolution Agreement" drafted by Kenny, required Kenny to pay the mortgage secured by the Ginny Drive property.  It also found that Kenny signed the 2012 acknowledgement accepting responsibility for completing full payment of the refinanced mortgage after Kenny failed to make the final balloon payment.  Based on the evidence presented, the court found Kenny owed Ladow $74,358.40.  The court had to place Kenny on mute during the remote appearance due to interruptions of the court and opposing counsel.  The court ultimately ended the virtual hearing after Kenny interrupted to comment, "That's lies.  And you know you

can do what you want, you can mute me, but that's lies.  I have nothing.
They have destroyed my life.  You're not getting a damn penny out of me."

This appeal followed.

## DISCUSSION

### I.  Sufficiency of the Evidence

Kenny argues that the family court lacked sufficient evidence to find
that Kenny owed Ladow $74,358.40 for payments on the Ginny Drive
mortgage.  " 'When a trial court's factual determination is attacked on the
ground that there is no substantial evidence to sustain it, the power of an
appellate court begins and ends with the determination as to whether, on the
entire record, there is substantial evidence, contradicted or uncontradicted,
which will support the determination.' " (*In re Marriage of Goodwin-Mitchell
& Mitchell* (2019) 40 Cal.App.5th 232, 238–239 (*Goodwin-Mitchell*).)
Substantial evidence means evidence that is " 'reasonable in nature, credible
and of solid value.' " (*In re Marriage of Paboojian* (1987) 189 Cal.App.3d
1434, 1438.)

Kenny bears the burden on appeal to show that the evidence was not
sufficient to support the court's findings.  (*Ashby v. Ashby* (2021) 68
Cal.App.5th 491, 512.)  "When reviewing for substantial evidence, 'all
conflicts must be resolved in favor of the prevailing party, and all legitimate
and reasonable inferences must be indulged in order to uphold the trial
court's finding.' " (*In re Marriage of Berman* (2017) 15 Cal.App.5th 914, 920.)
" 'In that regard, it is well established that the trial court weighs the evidence
and determines issues of credibility and these determinations and
assessments are binding and conclusive on the appellate court.' " (*Ibid.*)  " 'If
such substantial evidence be found, it is of no consequence that the trial court
believing other evidence, or drawing other reasonable inferences, might have

6

reached a contrary conclusion.' " (*Goodwin-Mitchell, supra*, 40 Cal.App.5th at p. 239.) On appeal, we do not " 'substitute [our] deductions for those of the trial court.' " (*Ibid.*)

Here, the family court had ample evidence to support its finding that Kenny had an obligation to make payments on the Ginny Drive mortgage. Pursuant to the 2007 dissolution agreement, which he wrote, Kenny agreed "to complete full payment, or in other way cause to be satisfied, this mortgage, before its maturity date of 8/20/2011." In 2012, after the mortgage was refinanced, Kenny signed an acknowledgement taking "responsibility for paying the current equity loan against [Ginny Drive], until it is completely paid off" and promised "to pay, at the minimum, the amount of $1,200 per month to Wells Fargo bank, until that loan is paid off." The January 2020 TRO repeated Kenny's obligation, providing yet further support for the family court's order.

The evidence also showed Kenny failed his obligation and Ladow had to make payments in his stead. Ladow declared that she paid $20,000 when Kenny was "unable or unwilling" to make the final balloon payment, and $40,186.30 for various monthly minimums that Kenny missed over a several-year period. Ladow presented a special interrogatory response from Kenny conceding that Ladow made these payments. Ladow also declared that she paid $14,172.10 for the final payoff of the mortgage after Kenny missed payments in 2020. The evidence was sufficient to support the court's finding that Kenny owed Ladow $74,358.40.

We are not persuaded by Kenny's arguments to the contrary. First, Kenny urges that the 2007 dissolution agreement should not be enforced against him because the divorce was a "fraud on the court" that Ladow and Kenny devised to avoid Kenny's business creditors while they continued their

romantic relationship. He also attempts to invoke the doctrine of "unclean hands" based on the parties' alleged fraud.

Kenny's perplexing admission of fraud on the court (and on his apparently bilked creditors) does not help his argument here. "After relief is no longer available under Code of Civil Procedure section 473 for mistake, inadvertence, surprise or excusable neglect, an otherwise valid and final judgment may only be set aside if it has been obtained through extrinsic, not intrinsic, fraud." (*In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1068.) "Fraud is extrinsic where the defrauded party was deprived of the opportunity to present his or her claim or defense to the court, that is, where he or she was kept in ignorance or in some other manner, other than from his or her own conduct, fraudulently prevented from fully participating in the proceeding." (*Id.* at p. 1068.) "When a claim of fraud goes to an issue involving the merits of the prior proceeding which the moving party should have guarded against at that time, or if the moving party was guilty of . . . contributing thereto, or failed to take advantage of liberal discovery policies to fully investigate his or her claim, any fraud is intrinsic fraud." (*Id.* at p. 1069.)

Kenny admits that he wrote the uncontested dissolution agreement himself. He admits he knew of the purported fraud at the time and alleges he conspired with Ladow to create it (which she denies). Kenny did not move to set aside or vacate the dissolution judgment in the 15 years since it was entered, and he has not demonstrated any basis to do so now.

We are also not persuaded by Kenny's argument that Ladow is barred from relying on the judgment based on the doctrine of unclean hands. We note that no one mentioned "unclean hands" as a basis for relief during the hearing on the order now on appeal, and so the argument was forfeited.

8

(*Daneshmand v. City of San Juan Capistrano* (2021) 60 Cal.App.5th 923, 936–937.) To the extent Kenny might argue his late-filed response to the request for order raised the issue of unclean hands, we note that the equitable doctrine of unclean hands generally prevents a plaintiff from benefitting from his or her own misconduct. (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 978.) "The misconduct that brings the unclean hands doctrine into play must relate directly to the cause at issue. Past improper conduct or prior misconduct that only indirectly affects the problem before the court does not suffice. The determination of the unclean hands defense cannot be distorted into a proceeding to try the general morals of the parties." (*Id.* at p. 979, citing *Fibreboard Paper Prods. Corp. v. East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 728–729.) "Whether the particular misconduct is a bar to the alleged claim for relief depends on (1) analogous case law, (2) the nature of the misconduct, and (3) the relationship of the misconduct to the claimed injuries." (*Kendall-Jackson Winery*, at p. 979, citing *Blain v. Doctor's Co.* (1990) 222 Cal.App.3d 1048, 1060.)

Kenny vehemently objects to Ladow obtaining any benefit from the judgment of dissolution based on his view that the parties were divorcing only to avoid his creditors. He attacks Ladow's general morals, and those of her counsel, and repeats his view that the parties maintained a romantic relationship and financial partnership. He does not, however, identify specific misconduct by Ladow concerning the mortgage payments that Kenny obligated himself to make when he prepared and signed the uncontested dissolution agreement, and that he acknowledged again in 2012 before traveling to work abroad. Kenny makes no effort to meet the legal test, articulated above, that is required to prove an unclean hands defense. For

9

her part, Ladow acknowledges that the divorce protected her separate property, but denies participation in any alleged fraud. The dissolution judgment remains valid, there is no evidence of explicit fraud by Ladow as to Kenny, and there is no legal or factual basis to find that Ladow has unclean hands in connection with enforcing the judgment against her former spouse. (*Goodwin-Mitchell*, *supra*, 40 Cal.App.5th at p. 239.)

Second, Kenny argues that he should be credited for the $20,000 partial balloon payment in 2011 because it was paid from Ladow's IRA and stock trading accounts. Kenny claims he earned the money in these accounts through his own trading. Ladow declared that these accounts were solely owned by her. Kenny conceded in deposition that the profit he had made while trading was through an account in Ladow's name. Kenny offers no authority to support his position that trading on Ladow's account after the dissolution entitles him to ownership over the assets in that account. (Cf. *Duffy v. Cavalier* (1989) 215 Cal.App.3d 1517, 1534 ["Stockbrokers act as agents for buyers and sellers of securities"].)

Third, Kenny contends that the acknowledgement he signed in 2012 after the refinancing of the loan was only created "in case something should happen" to him while he was working overseas, and thus it "became immaterial" once that job was not renewed in 2013. Kenny offers no support for this contention, which is contrary to the plain language of the agreement he made (without any conditions) to make monthly $1,200 payments until the mortgage was paid off. (See Civ. Code, § 1638 ["The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity"].)

Fourth, Kenny argues that Ladow presented "no evidence" that she actually paid the $40,186.30 in various monthly minimums between 2011

10

and 2015. Kenny incorrectly argues that Ladow was required to rely only on documentary proof to show that she made these payments. Declarations credited by a trial court may constitute sufficient evidence to support the court's factual finding. (See, e.g. *In re Marriage of Greenberg* (2011) 194 Cal.App.4th 1095, 1097–1099 [holding sanctions order supported by substantial evidence, including wife's declaration regarding increase in husband's monthly income].) Here, Ladow declared that she made 34 monthly payments in the amount of $1,181.95 between 2011 and 2015, totaling $40,186.30. Ladow also introduced into evidence Kenny's own special interrogatory response conceding that Ladow made the mortgage payments because she "had a much higher income" than Kenny did at the time, and "[i]t was a habit of the couple to have the larger bills paid by the partner with the higher income." (See *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 22 [explaining admissions and concessions obtained through discovery have "very high credibility value" because they are obtained "in the context of an established pretrial procedure whose purpose is to elicit facts"].) The family court's finding that Ladow had paid $40,186.30 in monthly minimums between 2011 and 2015 is therefore supported by substantial evidence.

Fifth, Kenny argues that Ladow was not entitled to reimbursement for the $14,172.10 final payoff amount because his failure to make payments in mid-2020 was excused by a forbearance period due to COVID-19.[3] If

---

[3] There is no evidence in the record that the Ginny Drive mortgage was actually in forbearance at this time. Kenny cites to an e-mail from Ladow's prior counsel regarding the forbearance as exhibit "A6" in his opening brief on appeal, but no such document is attached. Nor is it contained in the record before the trial court. " 'It is an elementary rule of appellate procedure that, when reviewing the correctness of a trial court's judgment, an appellate

payments had been delayed in forbearance due to the COVID-19 emergency, that does not mean the loan was forgiven. The loan would still need to be repaid at some point, and here that point arrived when Ladow sold the property. There is no indication in the 2007 dissolution agreement or the January 2020 TRO that Kenny's obligation to make payments could be excused by a bank forbearance. On the contrary, the January 2020 TRO ordered Kenny to make $1,200 payments for the loan due "monthly."

In sum, Kenny failed his burden to show that the court lacked sufficient evidence to support its findings. The appeal lacks merit.

## II. Kenny's Late-filed Responsive Declaration

Kenny also argues that we must reverse the order because the family court refused to consider his late-filed declaration. We review such rulings for abuse of discretion. (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 765.)

At the hearing, Kenny testified that he had asked the family law facilitator's office whether his response deadline was nine days before the hearing, and the office had confirmed that it was nine days. The office did not explain, nor was Kenny aware, that it was nine *court* days. Kenny thus contends that his miscalculation of the filing deadline was based on "excusable neglect." Code of Civil Procedure section 473, subdivision (b), provides that the court "may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect."

---

court will consider only matters which were part of the record at the time the judgment was entered.' " (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2.)

Even if Kenny could show excusable neglect, we conclude that any failure to consider his late-filed declaration was harmless. A party must establish prejudice before we will reverse an order based on an alleged failure to consider a late submission. (See *Bozzi v. Nordstrom, Inc., supra*, 186 Cal.App.4th at pp. 765–766 [explaining that "the outcome would not have been different" even if party had obtained leave of court to file late brief and supplemental declaration].) Kenny has not established any prejudice here. The court read Kenny's declaration and gave Kenny a full opportunity to present all the arguments set out in his responsive declaration at the hearing through his own argument and live testimony. Kenny relies on the same evidence and generally reasserts the same arguments on appeal. We have considered and rejected them for the reasons stated above.

As for the exhibits attached to his responsive declaration, Kenny cites a check "register" and check copies to suggest that he made "many payments" on the mortgage. These documents, however, do not contradict Ladow's evidence reflecting the payments she made. For example, the check register indicates that Kenny made $1,200 payments to Wells Fargo during one month in 2013, eight months in 2014, and six months in 2015. One of those checks is categorized as "Loan Payment," while the others are categorized as "business expe[.]" Even assuming these were all payments Kenny made on the Ginny Drive mortgage, they are entirely consistent with Ladow's declaration (and Kenny's special interrogatory response) that Ladow had to make 11 monthly payments in 2013, four monthly payments in 2014, and four monthly payments in 2015. Similarly, Kenny's exhibits include copies of checks dated between 2008 and 2019, but Kenny does not point to any check that contradicts the evidence Ladow made the 34 monthly minimum payments she testified that she made. Kenny says in his reply brief only that

"it is extremely likely" he "paid more payments than this."  Kenny has failed to establish a reasonable probability of a more favorable result had the family court formally considered his late-filed responsive declaration.

## DISPOSITION

The March 23, 2022 order is affirmed.  Respondent Ladow-Kenny is entitled to her costs on appeal.

_____
Markman, J.*


We concur:


_____
Stewart, P.J.


_____
Richman, J.


*In re the Marriage of Ladow-Kenny and Kenny* (A165162)


      * Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.